**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

In re:                                                              Chapter 11

**AAGS HOLDINGS LLC,**                                   Case No.:  19-13029-smb

                                   Debtor.
-------------------------------------------------------------X


SECOND AMENDED DISCLOSURE STATEMENT
FOR SECOND AMENDED PLAN OF REORGANIZATION

THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE
PLAN FOR AVENUE C TENANTS HDFC.  ACCEPTANCES OR REJECTIONS MAY
NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED
BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING
SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT
BEEN APPROVED BY THE BANKRUPTCY COURT.  THE INFORMATION
CONTAINED HEREIN IS SUBJECT TO COMPLETION OR AMENDMENT.


THIS DISCLOSURE STATEMENT HAS BEEN PRELIMINARILY APPROVED AS
CONTAINING ADEQUATE INFORMATION AND IS BEING SUBMITTED TO
THE BANKRUPTCY COURT FOR FINAL APPROVAL ON   NOVEMBER 14, 2019
AT 10:00 A.M. IMMEDIATELY PRIOR TO THE HEARING ON CONFIRMATION
SCHEDULED FOR NOVEMBER 14, 2019 AT 10:00 A.M. OF THE DEBTOR'S PLAN
OF REORGANIZATION.


**ROBINSON BROG LEINWAND GREENE**
**GENOVESE & GLUCK P.C.**
**Attorneys for the Debtor**
875 Third Avenue
New York, New York 10022
(212) 603-6300

{01029801 01031987.DOC;1 }

1

**Dated:** New York, New York
~~October~~November 11, 2019

**DISCLAIMER**

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT (THE "**DISCLOSURE STATEMENT**") IS INCLUDED HEREIN FOR THE PURPOSES OF SOLICITING ACCEPTANCES OF THE CHAPTER 11 PLAN OF REORGANIZATION OF AAGS HOLDINGS LLC, DATED ~~OCTOBER~~NOVEMBER 11, 2019 (AS MAY BE AMENDED, MODIFIED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN"), AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.[1]  NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. IN PARTICULAR, ALL HOLDERS OF CLAIMS SHOULD CAREFULLY READ AND CONSIDER FULLY THE RISK FACTORS SET FORTH IN SECTION VI (CERTAIN OTHER FACTORS) OF THIS DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE PLAN AND THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY CONFLICTS BETWEEN THE DESCRIPTIONS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN, THE TERMS OF THE PLAN GOVERN.**

THE DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b) AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAW.

CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING WITH RESPECT TO PROJECTED CREDITOR RECOVERIES AND OTHER FORWARD-LOOKING STATEMENTS, ARE BASED ON ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. FORWARD-LOOKING STATEMENTS ARE PROVIDED IN THIS DISCLOSURE STATEMENT PURSUANT TO THE SAFE HARBOR ESTABLISHED UNDER THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995 AND SHOULD BE EVALUATED IN THE CONTEXT OF THE ESTIMATES, ASSUMPTIONS, UNCERTAINTIES, AND RISKS DESCRIBE HEREIN.

AS TO CONTESTED MATTERS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR

---

[1] Unless otherwise expressly set forth herein, capitalized terms used but not otherwise herein defined have the same meanings ascribed to such terms in the Plan.

{~~01029801~~01031987.DOC;1 }

WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT ALSO WILL NOT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR AND DEBTOR IN POSSESSION IN THE DEBTOR'S CHAPTER 11 CASE. THE DEBTOR URGES EACH HOLDER OF A CLAIM OR INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN ON SUCH HOLDER'S CLAIM OR INTEREST.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF.

**SUMMARY**

AAGS Holdings LLC (the "Debtor"), has filed its *Amended Plan of Reorganization* dated ~~October~~November 11, 2019 and its *Second Amended Plan of Reorganization* dated November 11, 2019 (the "Plan"), with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). This Second *Amended* Disclosure Statement for *the Second Amended Plan of Reorganization* (the "Disclosure Statement") has been **preliminarily approved** by the Bankruptcy Court as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code").

A copy of the Plan accompanies this Disclosure Statement. A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan. Words used but not defined herein shall have the meaning ascribed to such terms in the glossary.

The treatment of Claims under the Plan provides Creditors with payment in full on account of their claims. Debtor submits that the Plan therefore provides Creditors with at least as much as they would be entitled to receive in a chapter 7 liquidation.

**The Debtor believes that Confirmation of the Plan is in the best interests of Creditors.**

**THE DEBTOR**

~~The Debtor is a limited liability company~~ ~~currently under contract to purchase~~Prior to the Petition Date, parties related to the Debtor were involved in two New York state litigations related to the failed development of two adjoining properties. In an effort to settle these litigations, the parties entered into a settlement agreement where, among other things, one of the properties subject to the litigation, the real property located at 23-10 Queens Plaza South, Queens, New York (the "Property")~~. The Property, which~~ is ~~currently~~ owned by QPS 23-10 Development LLC ("QPS" or "Seller"), was to be sold to a newly formed entity, the Debtor. The Debtor believes that under the terms of the Settlement Agreement[2], QPS is obligated to pay from the sale proceeds generated by the closing, the sum of $1,200,000 to Russ & Russ P.C. as escrow agent, to hold such funds pending a determination of a sperate interpleader action Russ & Russ is required to commence pursuant to the Settlement Agreement.[3]

The Debtor is a limited liability company formed to purchase the Property. Debtor and Seller entered into an Agreement of Purchase and Sale dated July 17, 2019 (the "APS") to sell

---

[2] The Settlement Agreement is not attached to this Disclosure Statement due to the presence of a confidentiality provision in it. In addition, although the agreement gave rise to the APS, the Debtor is not a party to the Settlement Agreement. However, the Debtor will make the Settlement Agreement available to the Court for an *in camera* review, should the Court deem it necessary.

[3] The $1,200,000 payment was reflected as a deduction from the sale proceeds on the settlement statement from Royal Abstract, the title company selected to close the transaction, which was attached to the Affidavit of Ari Tran, ECF Doc No. 32 as Exhibit H.

{~~01029801~~01031987.DOC;1 }

the Property to the Debtor for a purchase price of $27,500,000, with closing scheduled for September 20, 2019.  The Debtor's emergency filing was precipitated by the Debtor's need for additional time to consummate the APS with the Seller and to avoid losing its rights under the APS and its $100,000 deposit.

**THE PLAN**

The Plan provides for (a) approval of the Exit Financing in an amount up to $30,000,00029,750,000, which, along with an equity contribution from the Debtor's existing members of approximately $3,850,000 and an equity contribution from its new Churchill member in the amount of $250,000, there will be sufficient funds to fundmake all payments required under the Plan, including funding the Purchase Price and (b) the immediate assumption of the APS, payments to all creditors under the Plan and Closing on the sale pursuant to the terms of the Plan (including professionals and reserves for disputed claims), payment of the fees and interest reserves required in connection with the proposed exit financing and the payment of the carrying costs for the property through the maturity date of the Exit Financing. Based upon the foregoing, upon the occurrence of the Effective Date, the Debtor will be able to immediately close on the acquisition of the Property pursuant to the APS under the terms of the Plan.

Upon the Closing, the Property will vest in the Post-Confirmation Debtor.

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan.  The figures set forth in the table below represent the Debtor's best estimate of the total amount of Allowed Claims in the Case.  These estimates have been developed by the Debtor based on an analysis of the Schedules filed by the Debtor, the Proofs of Claims filed by Creditors and certain other documents of public record.  The Bankruptcy Court has yet to set a deadline for the filing of proofs of claim, so the amounts below are subject to change.  See "SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE -- Bar Date."  Although the Debtor believes that the amounts of the claims set forth below are substantially correct, there can be no assurance that Claims will be allowed by the Bankruptcy Court in the amounts set forth below:

| Class and Estimated Amount[24] | Type of Claim | Summary of Treatment |
|---|---|---|
| $0.00 | Administrative Claims (excluding Claims for professional compensation and reimbursement, but | **Non-Voting.**  Subject to the provisions of article 7 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (x) the Closing Date, (y) the |

---

[24] The amounts set forth in this schedule are not, and should not be deemed admissions by the Debtor as to the validity or amount of any claim and the Debtor reserves all rights to object to any claim in this case.

{0102980101031987.DOC;1 }

| Class and Estimated Amount[24] | Type of Claim | Summary of Treatment |
|---|---|---|
| including post-petition ordinary course liabilities) | | date payment of such Claim is due under the terms thereof or applicable law, or (z) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the Holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or performed by the Debtor in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto. |
| As of ~~October 10, 2019~~the Effective Date, Debtor's counsel ~~is owed approximately $40,652.00 for~~ fees and expenses will be approximately $150,000 | Administrative Claims for Professional Compensation and Reimbursement | **Non-Voting.** Each Person seeking an award by the Bankruptcy Court of Professional Fees shall file ~~shall filea~~ final ~~applications~~application for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to section 330 of the Bankruptcy Code no later than the Administrative Bar Date.  Any such application timely filed shall be deemed to be a Proof of Administrative Claim.  No later than three days prior to the Effective Date, each such Professional shall provide the Disbursing Agent with an estimate of the total amount of compensation and expenses for which such Professional expects to seek final compensation pursuant to section 330 of the Bankruptcy Code.  Such estimates shall include estimated sums for the preparation and prosecution of any such application.  Unless otherwise agreed by such claim holder in writing, on the Effective Date the Disbursing Agent shall segregate sufficient cash to pay all such estimated compensation and expenses in full.  Objections to any Professional's application for compensation or reimbursement must be filed and served upon such Professional, and the Disbursing Agent, in accordance with the Bankruptcy Rules.  Any such objection not timely filed and served shall be deemed to have been waived. |
| Class 1 ~~$1,193,861.36[3]~~$593,861.36[5]. | General Unsecured Claims | **Unimpaired.** On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed General Unsecured |

[3] ~~Includes~~[5] Excludes $600,000 claim of Churchill Real Estate, which is scheduled as contingent and disputed.

{~~0102980101~~031987.DOC;1 }

| Class and Estimated Amount[24] | Type of Claim | Summary of Treatment |
|---|---|---|
| | | Claim agrees to less favorable treatment of such Allowed General Unsecured Claim or has been paid before the Effective Date, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, Cash equal to the Allowed amount of such Claim plus accrued post-petition interest at the Federal Judgment Rate on the Effective Date. |
| Class 2 | Interest Holders | **Unimpaired**.  On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that an Interest Holder agrees to less favorable treatment, the holder of such Allowed Equity Interest shall retain such Interest. |

**CONFIRMATION OF THE PLAN**

Pursuant to sections 1125 and1128 of the Bankruptcy Code, the United States Bankruptcy Court for the Eastern District of New York has scheduled a hearing to consider Confirmation of the Plan and final approval of the Disclosure Statement, on [ ], 2019 at __10:00 a.m., Eastern Standard Time, in the United States Bankruptcy Court, One Bowling Green, New York, New York 10004.  Objections, if any, to Confirmation of the Plan or final approval of the Disclosure Statement shall be filed and served on or before , 2019 at 5:00 p.m. (the "Objection Deadline").

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  The Debtor intends to seek Confirmation of the Plan at the Confirmation Hearing.  **The Debtor believes that the Plan satisfies all applicable requirements of section 1129(a) of the Bankruptcy Code**.  Confirmation makes the Plan binding upon the Debtor, all Creditors and other parties regardless of whether they have accepted the Plan.

As of the Effective Date, all Holders of Claims and Interests will be precluded from asserting any Claim against the Debtor, the Property, or its other assets or other Interests in the Debtor based on any transaction or other activity of any kind that occurred before the Confirmation Date except as otherwise provided in the Plan.

**NO VOTING – SUMMARY**

{01029801 01031987.DOC;1 }

8

THE PLAN PROVIDES FOR PAYMENT IN FULL TO EACH CLASS OF CREDITORS OR OTHERWISE DOES NOT IMPAIR THE CLAIMS OF CREDITORS OR INTEREST HOLDERS. AS EACH CLASS OF CLAIMS OR INTERESTS IS UNIMPAIRED AND THE HOLDERS OF SUCH CLAIMS OR INTERESTS ARE NOT BEING SOLICITED, ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN AND ARE DEEMED TO HAVE ACCEPTED THE PLAN.

NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement and the accompanying notification of non-voting status is being furnished by the Debtor to the Debtor's known Creditors pursuant to section 1125(b) of the Bankruptcy Code. A copy of the Plan is included in this package and is incorporated herein by reference.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR. THE STATEMENTS AND OPINIONS SET FORTH HEREIN ARE THOSE OF THE DEBTOR, AND NO OTHER PARTY HAS ANY RESPONSIBILITY WITH RESPECT THERETO.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NONBANKRUPTCY LAW. THIS DISCLOSURE STATEMENT WAS PREPARED TO PROVIDE HOLDERS OF CLAIMS AGAINST THE DEBTOR WITH "ADEQUATE INFORMATION" (AS DEFINED IN THE BANKRUPTCY CODE) SO THAT THEY CAN MAKE AN INFORMED JUDGMENT ABOUT THE PLAN.

THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE PLAN OR UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

The historical information concerning the Debtor has been prepared using the Debtor's books and records and certain filings made with the Bankruptcy Court. The estimates of Claims set forth herein may vary from the final amounts of Claims allowed by the Bankruptcy Court. While every effort has been made to ensure the accuracy of all such information, except as noted in the Disclosure Statement, the information presented herein is unaudited and has not been examined, reviewed or compiled by the Debtor's independent public accountants.

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition Date documents, agreements, or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Debtor of the existence, validity, allowance, or amount of any such claim, document or agreement. The Debtor expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, as well as descriptions of certain other related documents. While the Debtor believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling. In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS." No statements or information concerning the Debtor, the Properties, or its other assets, results of business operations or financial condition are authorized by the Debtor other than as set forth in this Disclosure Statement and the exhibits hereto.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

No Person has been authorized to use or promulgate any information concerning the Debtor or its business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto. You should not rely on any information relating to the Debtor or its business or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

## PROPONENT'S RECOMMENDATION

In the Debtor's opinion, the treatment of Creditors under the Plan which provides for payment in full on account of their claims provides Creditors with at least as much as they would be entitled to receive in a liquidation under Chapter 7. See "ALTERNATIVES TO THE PLAN." The Plan as proposed provides for payment in full to each class of creditors and the conveyance of the Properties to the Debtor.

**THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS.**

{0102980101031987.DOC;1 }

## SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

### RETENTION OF PROFESSIONALS

Section 327(a) of the Bankruptcy Code provides that the Debtor, with the court's approval, may employ one or more accountants or other professional persons that do not hold or represent an interest adverse to the estate and that are disinterested persons to represent or assist the Debtor in carrying out its duties under the Bankruptcy Code.  11 U.S.C. § 327(a).

~~The~~On October 10, 2019, the Debtor ~~will seek~~sought authority from the Court to retain the law firm of Robinson Brog Leinwand Greene Genovese & Gluck P.C., as its ~~bankruptcy~~ counsel.  The application was granted pursuant to an Order entered on October 17, 2019.

### MOTION TO DISMISS

On October 3, 2019, QPS filed a motion to dismiss the chapter 11 case or alternatively for relief from the automatic stay.  A hearing on the motion ~~is currently scheduled for~~was held on October 29, 2019 and the motion to dismiss was denied by the Bankruptcy Court.

### BAR DATE

In accordance with the requirements of section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtor has filed its Schedules, including schedules of all of its known creditors and the amounts and priorities of the Claims the Debtor believes are owed to such creditors.  Pursuant to section 501 of the Bankruptcy Code, any creditor may file a Proof of Claim and, unless disputed, such filed Proof of Claim supersedes the amount and priority set forth in the Debtor's schedules.  By order of the Bankruptcy Court dated October 7, 2019, November 18. 2019 was set as the last day for creditors to file Proofs of Claim in the Debtor's Chapter 11 case.

As a result of the Bar Date having been set after the date fixed for the confirmation hearing, the Debtor has had to make a good faith estimate of the claim that may be submitted by QPS as a result of the closing not proceeding on September 20, 2019 and instead proceeding as later as November 27, 2019, 69 days later.[6] The Debtor's sources and Uses annexed hereto as **Exhibit A** shows an estimate of this claim to be $344,977, consisting o0f estimated reasonable legal fees of $55,000, real estate taxes and water charges of $40,159, insurance costs of $3,781 and interest in the amount of $246,037 on the sales proceeds at the prime rate for 69 days. This amount or any different amount asserted by QPS may be subject to dispute by the Debtor.

---

[6] Although November 27, 2019 is an outside date stipulated to by the parties, the Debtor may well seek to proceed immediately after entry of the Confirmation Order in the absence of any stay.

{~~01029801~~01031987.DOC;1 }

There can be no assurance that the Allowed Claims as determined by the Bankruptcy Court will be in the amounts and priorities stated in the Schedules filed by the Debtor or the Proofs of Claim filed by the Creditors.

### OPERATING REPORTS

Pursuant to the requirements of the Office of the United States Trustee for the Southern District of New York, the Debtor is responsible for the filing of monthly operating reports with the Bankruptcy Court detailing the results of the Debtor's ongoing business operations.  Monthly reports are filed regularly.

### SUMMARY OF THE PLAN

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which accompanies this Disclosure Statement and which is incorporated herein by reference.

### Classification of Claims

Article 3 of the Plan classifies the various Claims against the Debtor into one (1) class of Claims and one (1) Class of Interests:

Class 1 – General Unsecured Claims
Class 2 – Interests

Claims in Class 1 and Interests in Class 2 are unimpaired under the Plan. The votes of Holders of Claims in Classes 1 and 2 and Interests in Class 3 are therefore NOT being solicited, are NOT entitled to vote to accept or reject the Plan and are deemed to have accepted the Plan.  As set forth in Article 2 of the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims against the Debtor have not been classified.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

### TREATMENT OF CLAIMS CLASSIFIED UNDER THE PLAN

Article 4 of the Plan provides for the treatment of the Claims and Interests classified in Article 3 of the Plan.

**Class 1 - Unsecured Claims.**  On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Allowed General Unsecured Claim or has been paid before the Effective Date, each holder of an Allowed General Unsecured Claim shall

receive, in full and final satisfaction of such Claim, Cash equal to the Allowed amount of such Claim plus accrued post-petition interest at the Federal Judgment Rate on the Effective Date.

      **Class 2 – Interests**.  On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that an Interest Holder agrees to less favorable treatment, the holder of such Allowed Equity Interest shall retain such Interest.

TREATMENT OF NON-CLASSIFIED CLAIMS

      Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under section 507(a)(2) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.  Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

      **Administrative Claims.**  Subject to the provisions of article 7 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (x) the Closing Date, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the Holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or performed by the Debtor in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

      Article 2 of the Plan sets a final date for the filing of Administrative Claims against the Debtor.  The Administrative Bar Date is the first Business Day that is 30 days after the Effective Date.

      **Bankruptcy Fees.**  All fees and charges assessed against the Debtor under section 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid in Cash in full as required by statute, and, until the closing, conversion or dismissal of this case, whichever is earlier, the Post-Confirmation Debtor shall continue to be responsible for the payment of any such fees and charges.

      **Professional Fees.**  Section 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained by a Debtor in a case under the Bankruptcy Code.  In general, "bankruptcy legal services are entitled to command the same competency of counsel as other cases.  In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable service other than in a case under title 11."  124 Cong. Rec. H11091 (Daily ed. Sept. 28, 1978).

{01029801.01031987.DOC;1 }

With respect to Professionals' Fees, the Plan provides that, subject to the approval of compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Debtor shall pay the Administrative Claims held by Bankruptcy Professionals as follows:

No later than three days prior to the Effective Date, each Professional shall provide the Debtor with an estimate of the total amount of compensation and expenses for which such Professional expects to seek final compensation pursuant to section 330 of the Bankruptcy Code. Such estimates shall include estimated sums for the preparation and prosecution of any application for final compensation. Upon the receipt of such notice, Debtor shall segregate sufficient cash to pay all such estimated compensation and expenses in full unless otherwise agreed to by the Debtor and such Professionals; *provided, however,* that the failure of a Professional to provide such an estimate shall relieve the Debtor of its obligation to segregate funds for the payment therefore, but shall not relieve the Debtor of the obligation with respect to any allowed compensation and expense reimbursement.

All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to section 330 of the Bankruptcy Code no later than the Administrative Bar Date. Any such application timely filed shall be deemed to be a Proof of Administrative Claim. No later than three days prior to the Effective Date, each such Professional shall provide the Disbursing Agent with an estimate of the total amount of compensation and expenses for which such Professional expects to seek final compensation pursuant to section 330 of the Bankruptcy Code. Such estimates shall include estimated sums for the preparation and prosecution of any such application. Unless otherwise agreed by such claim holder in writing, on the Effective Date the Disbursing Agent shall segregate sufficient cash to pay all such estimated compensation and expenses in full. Objections to any Professional's application for compensation or reimbursement must be filed and served upon such Professional, and the Disbursing Agent, in accordance with the Bankruptcy Rules. Any such objection not timely filed and served shall be deemed to have been waived.

**DISPUTED CLAIMS**

Article 7 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims asserted against the Debtor by any Entity.

**Time to Object.** Unless otherwise ordered by the Bankruptcy Court, objections to the allowance of any Claim filed may be filed no later than the later to occur of (i) 60 days after the Effective Date or (ii) 60 days after the date such Proof of Claim is filed. Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, Claims shall be deemed to be Disputed in their entirety if, (i) the amount specified in a Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (ii) any corresponding Claim listed in the Schedules

has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Claim has
been listed in the Schedules.

## DISTRIBUTIONS UNDER THE PLAN

Article 7 contains provisions governing the making of distributions on account of
Claims. In general, any payments, distributions or other performance to be made pursuant to the
Plan on account of any Allowed Claim shall be deemed to be timely made if made on or within
five days following the later of (i) the Closing Date or (ii) the expiration of any applicable
objection deadline with respect to such Claim or (iii) such other time as provided in the Plan. All
Cash payments to be made by the Debtor pursuant to the Plan shall be made by check drawn on a
domestic bank.

**Disbursing Agent.** Except for payments to be made by the title company at the
Closing, the Disbursing Agent shall distribute all Cash or other property to be distributed under
the Plan and may employ or contract such third parties as may be necessary to assist in or
perform the distribution of Cash or other property under the Plan. Pending the final distribution
of all sums distributable under the terms of the Plan (including the delivery to the Debtor of
unclaimed distributions pursuant to section 7.14 of the Plan), the Disbursing Agent shall have
full authority to sign checks on any bank account of the Debtor to the extent necessary to make
any payment or distribution contemplated by the Plan.

**Method of Payment.** Unless otherwise expressly agreed, in writing, all Cash
payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank or
by wire transfer.

## UNCLAIMED DISTRIBUTIONS

Any Cash or other property to be distributed under the Plan shall revert to the
Post-Confirmation Debtor if it is not claimed by the Entity entitled thereto before the later of (i)
90 days after the distribution date or (ii) 60 days after an Order allowing the Claim of that Entity
becomes a Final Order or is otherwise Allowed.

## DISTRIBUTIONS WITH RESPECT TO DISPUTED CLAIMS

**No Distribution Pending Allowance.** Notwithstanding any other provision of
the Plan, no payment or distribution of any kind shall be made with respect to any portion of a
Disputed Claim unless and until all objections to such Claim are resolved by Final Order.
However, the Disbursing Agent shall segregate Cash equal to 100% of the amount which would
be distributed on account of such Disputed Claim if such Claim had been an Allowed Claim but
for the pendency of the objection.

Until the dispute over the claim is resolved, the Disbursing Agent shall also segregate any interest or dividends earned upon such amount it is holding on account of such Disputed Claim.

**Distribution After Allowance.**  Within 30 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property held in escrow with respect to such claim, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.  Any segregated amounts remaining after all Disputed Claims have been resolved will be retained by the Debtor.

## SURRENDER OF INSTRUMENTS

No Creditor that holds a note or other instrument evidencing such Creditor's Claim may receive any distribution with respect to such Claim unless and until the note or other instrument evidencing such Claim is surrendered pursuant to the provisions of section 7.12 of the Plan.  That section also contains specific provisions governing lost, stolen, or mutilated notes and instruments, including the requirement that reasonable indemnification be provided to the Post-Confirmation Debtor or Disbursing Agent for such exchange.

## COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Post-Confirmation Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements.

## EFFECTIVE DATE

The Effective Date of the Plan is defined as the first Business Day after the Confirmation Order has been entered. It is intended that the Debtor will close on the Contract immediately after the Effective Date has occurred but, in all events, no later than November 1927, 2019.

## CONDITIONS TO THE EFFECTIVE DATE

The Confirmation Order must be entered by the Court and not be the subject of a stay.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

On the Effective Date, the Debtor shall be authorized to ~~assume~~perform its obligations under the APS.  At Closing, the balance of the Purchase Price shall be paid to QPS as set forth in the APS. In accordance with section 108(b) of the Bankruptcy Code, the Debtor has the right to perform under the APS by curing any default under the APS and close on the acquisition of the Property thereunder on or prior to November ~~19~~27, 2019.[7]

Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to an Executory Contract or Unexpired Lease to be assumed pursuant to the Plan, any monetary defaults arising under such executory contract or unexpired lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the appropriate amount (the "Cure Amount") in full in Cash on at the Closing; or (ii) the date on which any Cure Dispute relating to such Cure Amount has been resolved (either consensually or through judicial decision).

In the event of a dispute (each, a "Cure Dispute") regarding: (i) the Cure Amount; (ii) the ability of the Post-Confirmation Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed; or (iii) any other matter pertaining to the proposed assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such Cure Dispute and approving the assumption. To the extent a Cure Dispute relates solely to the Cure Amount, the applicable Debtor may assume and/or assume and assign the applicable contract or lease prior to the resolution of the Cure Dispute provided that such Debtor reserves Cash in an amount sufficient to pay the full amount asserted as the required cure payment by the non-Debtor party to such Executory Contract or Unexpired Lease (or such smaller amount as may be fixed or estimated by the Court). To the extent the Cure Dispute is resolved or determined against the Post-Confirmation Debtor, the Post-Confirmation Debtor may reject the applicable Executory Contract or Unexpired lease after such determination, and the counterparty may thereafter file a proof of claim.

**THE POST-CONFIRMATION DEBTOR**

The Debtor shall continue in existence post-confirmation. ~~After~~Prior to confirmation and the acquisition of the ~~Plan~~Property, Greg Segal and Alex Adjmi will continue to manage the day to day affairs of the Debtor and Jay Russ will continue to be responsible for major decisions as set forth in the Debtor's pre-petition operating agreement.

After the transfer of the Property has been consummated, the Debtor shall enter into an amended and restated operating agreement[8] pursuant to which Churchill SP-QPS LLC  (the "Churchill Member") shall be a fifty (50%) percent member and DS Partners LIC LLC  (the "DS

---

[7] The time to close has been extended by agreement of the parties from November 19, 2019 to November 27, 2019 in accordance with a stipulation "so ordered" by the Court on November 6, 2019. ECF Doc. No.38.

[8] Attached as **Exhibit B** is the proposed amended and restated operating agreement which will be executed substantially form as annexed hereto.

{~~0102980101031987~~.DOC;1 }

Member") shall be a fifty (50%) percent partner. DS Partners LIC LLC shall be owned 75% by Gary Segal and 25% by Spencer Laney, LLC. The DS Member shall be the Managing Member subsequent to the acquisition of the Property, provided, however, that all major decisions shall require unanimous consent of the members so long as the Exit Financing remains outstanding.

### IMPLEMENTATION OF THE PLAN

**Implementation.** The Debtor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan including but not limited to: (a) closing on the Exit Financing, (b) performing under the APS, (c) distributing the remaining Exit Financing proceeds, Equity Contribution and Churchill Equity Contribution to pay Creditors under the Plan. The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property by the estate or by any non-debtor third party, required by the Plan and to perform any act, including the satisfaction of any lien, that is necessary for the consummation of the Plan.

**Mechanism of Plan Funding.** Funding for the Plan shall come from the proceeds of the Exit Financing. In connection therewith, and other than the balance of the Purchase Price due to QPS which shall be paid at Closing, payments and distributions to be made under the Plan to the holders of Administrative Claims, Priority Tax Claims, Bankruptcy Fees, and Unsecured Claims, shall be made on the Effective Date by the Disbursing Agent or, with respect to Debtor's professionals, pursuant to Bankruptcy Court Order. , the Equity Contribution and the Churchill Equity Contribution. Prior to Confirmation of the Debtor's Plan, the Debtor's members and Churchill will negotiate and agree on the terms of an amended and restated operating agreement to take effect subsequent to the Debtor's acquiring title to the Property under the APS. In addition, the Debtor's members shall put into escrow with the Disbursing Agent fifty (50%) percent of the membership interests of the Debtor which interests shall be transferred to Churchill immediately after the delivery of the deed to the Property to the Debtor.

Prior to Confirmation, Churchill shall fund the Exit Loan by depositing the loan proceeds with the Disbursing Agent and the Debtor shall execute and deposit with the Disbursing Agent the Exit Financing Loan Documents to be effective upon the delivery of the Deed to the Debtor. When notified that the title company is ready to close, the Disbursing Agent shall transfer the loan proceeds to the title company to be disbursed to the Seller and the Exit Lender as required for the Debtor to acquire the Property and Churchill to acquire a first lien on the Property in accordance with its Exit Financing Loan Documents. Upon being notified by the title company that the closing has occurred, the Amended and Restated Operating Agreement of AAGS shall be effective without further action of or authorization by any of the Debtor's members and the fifty (50%) percent membership interests in the Debtor deposited with the Disbursing Agent shall be transferred to Churchill-SP QPS LLC without further action of or authorization by any of the Debtor's members.

The balance of the funds held by the Disbursing Agent in excess of those necessary to pay for the acquisition of the Property and the expenses of the Exit Loan shall be held by the Disbursing Agent to fund the payments to creditors under the Plan, to fund the reserve for professional fees required by the Plan and fund any reserve for disputed claims. The balance of the funds remaining after the funding of the Plan shall be returned to the Debtor to pay operating expenses of the Debtor from the Effective Date of the Plan through the maturity date of the Exit Loan.

Parties in interest are directed to the attached **Exhibit A** setting forth the *Sources and Uses* of cash under the Plan described in this paragraph.

**Vesting of Assets.** Upon Confirmation, the Debtor shall be authorized to close on the Exit Financing and assume the APS. Upon the Closing, the Property shall vest in the Post-Confirmation Debtor, free and clear of all liens, Claims and encumbrances, subject only to the mortgage granted in favor of the lender pursuant to the Exit Financing. As of the Closing, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished. Any other assets of the Debtor shall vest in the Post-Confirmation Debtor free and clear of all Liens, Claims and encumbrances.

**Execution of Documents.** (a) Upon entry of the Confirmation Order, the Debtor/Post-Confirmation Debtor and any necessary party thereto, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

(b) Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, Debtor/Post-Confirmation Debtor shall be authorized to execute, in the name of any necessary party any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including, any Lien, Claim or encumbrance that is to be released and

{0102980101031987.DOC;1 }
19

satisfied upon the Debtor's compliance with the provisions of article 4 of the Plan) not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

**Filing of Documents.** Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

**Distributions**. Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent for disbursement in accordance with the terms of the Plan.

PRESERVATION OF RIGHTS OF ACTION

The Debtor shall retain, and in accordance with its determination of the best interest of the estate, may enforce any claims, rights and causes of action (i) arising under sections 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate, and arising under any provision of state or federal law, or any theory of statutory or common law or equity.

EXEMPTION FROM TRANSFER TAXES, MORTGAGE RECORDING TAXES, OR SIMILAR TAXES

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan, (including any instrument of transfer executed in furtherance of the sale contemplated by the Plan), shall not be subject to tax under any law imposing a stamp tax~~, real estate Transfer Tax, mortgage recording tax~~ or similar tax~~, including any such taxes due on any sale of the Properties in connection with or in furtherance of the Plan and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local  government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment~~.

REVOCATION OF THE PLAN

The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Debtor revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a

waiver or release of any Claims by or against the Debtor; or prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

## RETENTION OF JURISDICTION

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan, and to determine all other matters pending on the date of confirmation.

## RISK FACTORS

## RISK FACTORS

Although the Debtor believes that it will be able to meet all of the obligations that it is undertaking pursuant to the Plan there can be no assurance that the Closing will occur. Each Creditor and its respective advisers should consider the following factors (and other risks considered elsewhere in this Disclosure Statement).

~~Additionally, a motion to dismiss was filed by QPS, however, the Debtor intends to vigorously oppose this motion. Despite the Debtor's opposition to the motion to dismiss and the filing of the Plan, there remains a possibility that QPS's motion could be granted and the Debtor's chapter 11 case could be dismissed.~~

## CONFIRMATION OF THE PLAN

All distributions to Creditors are contingent on the Plan being confirmed by this Court. Otherwise, the Debtor is not obligated, in any way, to make the payments required hereunder.

## OPERATIONAL/FUNDING RISKS

The Plan as proposed calls for all payments to be made to creditors at Closing or on the Effective Date. Therefore, the operational risks under a plan that provides for payments over time are simply not present in this Plan. Thus, the Debtor does not believe the Plan entails any operational or funding risk <u>regarding payments</u> to creditors. <u>In addition, the monies necessary to pay the carrying costs and pre-developments costs of the Debtor during the year from the Effective Date through the Maturity Date of the Exit Loan have been put in escrow with the Disbursing Agent and will be held by the Debtor subsequent to the Effective Date. Thus the Debtor will have the funds on hand needed to pay its ongoing obligations.</u>

## VOTING INSTRUCTIONS

{~~01029801~~<u>01031987</u>.DOC;1 }

As noted herein, Claims in Class 1 and Interests in Class 2 are not impaired by the Plan. Accordingly, Holders of Claims in Class 1 and Interests in Class 2 are deemed to have accepted the Plan and votes of holders of Claims in Class 1 and Interests in Class 2 will not be solicited.

CONFIRMATION OF PLAN

**CONFIRMATION HEARING**

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider final approval of the disclosure statement and confirmation of the Plan. **The Confirmation Hearing is scheduled to commence on [ ]November 14, 2019, at 10:00 a.m. in the United States Bankruptcy Court, One Bowling Green, New York, New York 10004.** The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

**Objections, if any, to final approval of the disclosure statement or confirmation of the Plan shall be filed and served by email so as to be received on or before** ~~November 16~~October 26, ~~2018~~2019 **at 5:00 p.m.** Objections must be served upon (i) Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, 9th Fl, New York, NY 10022, Attn.: A. Mitchell Greene, Esq. (amg@robinsonbrog.com) and Fred B. Ringel (fbr@robinsonbrog.com), and (ii) United States Trustee, 201 Varick Street, Room 1006, New York, New York 10014 Attn: Shannon Scott, Esq. (Shannon.Scott2@usdoj.gov) and filed electronically in accordance with the Court's ECF procedures.

**REQUIREMENTS FOR CONFIRMATION**

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Debtor has proposed the Plan in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interests" of all Creditors, (vi) the Plan is feasible, and (vii) the Plan has been accepted by the requisite number and amount of Creditors in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.** The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value

{~~0102980101031987~~01031987.DOC;1 }

such entity would receive or retain if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code.  No class of claims is impaired pursuant to the Plan.  The Plan provides for payment in cash in full to all classes of claims.

**Liquidation Analysis.**  The Plan provides for payment in full to each class of Allowed Claims.  Accordingly, the Debtor believes that the Plan provides Creditors with at least as much as they would be entitled to receive in a chapter 7 liquidation.

**Feasibility.**    For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless such liquidation is set forth in the Plan. This Plan calls for the Closing on the APS and the transfer of the Property to the Debtor.  The Purchase Price and any distributions to creditors will be funded by the proceeds of the Exit Financing and/or any other source identified by the Post-Confirmation an equity contribution of approximately $4.350 million.  The Debtor whoand its members shall evidence their ability to fund the Purchase Price and any other plan payments at or prior to the confirmation hearing by depositing the funds with the Disbursing Agent. Therefore, Debtor submits there are funds sufficient to satisfy all of the Debtor's Allowed Claims.

After the Closing, the Debtor intends on developing the Property into a two story, 54,000 square foot retail building located on a 27,200 square foot southwest corner lot. The property will have 27,000 square feet of parking space on the roof with 180 parking spaces. The Debtor has estimated it will incur $500,000 in pre-development expenses (or which $50,000 is for contingency). The pre-development budget is needed to obtain drawings and get approvals to demolish two floors of the building to conform top present zoning as well as to design the building for a new retail tenant use. There are no zoning changes or governmental approvals needed to achieve the Debtor's development objectives.

The Debtor does not anticipate generating income from the Property to pay for the carrying costs and development of the Property and therefore the Debtor's members have contributed funds sufficient to pay the costs to develop the Property and fund its carrying costs through the maturity date of the loan.  Attached to the Disclosure Statement as **Exhibit A** is a proposed use of funds which sets forth the sums necessary for payment of the Debtor's operations subsequent to the Effective Date until the maturity of the Exit Financing one (1) year from the Effective Date.

Upon the maturity of the Exit Financing, the Debtor intends on refinancing the Exit Financing Loan Documents.  Should the Debtor be unable to find refinancing upon maturity of the Exit Financing, the Plan provides that the Property will be turned over to the Exit Lender.

{0102980101031987.DOC;1 }

## EFFECT OF CONFIRMATION

RELEASES

Except as otherwise provided in the Plan, upon the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtor, on the one hand, and each Creditor and Interest Holder, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its Creditors or Interest Holders ever had or now have through the Effective Date in connection with their Claim or Interest (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of Creditors or Interest Holders pursuant to sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor's business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan), provided however that nothing in the Plan or the Confirmation Order shall effect a release of any claim for any debt owed to the United States Government arising under the Internal Revenue Code; any state, city or municipality arising under any state, city or municipal tax code;  any environmental laws or any criminal laws of the United States or any state, city or municipality.  Nothing in the Confirmation Order or the Plan shall enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any claim, suit or action arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state, city or municipality.  Nothing in the Confirmation Order or the Plan shall exculpate any party from any liability to the United States Government or any of its agencies or any state, city or municipality arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state.

INJUNCTION

(a) Except (i) as otherwise provided under Final Order entered by the Bankruptcy Court or (ii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any Claim held against the Debtor as of the date of entry of the Confirmation Order (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtor, from the Properties, or from property of the Estate that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any lien or encumbrance against the Properties and any property of the Estate that has been or is to be, distributed under the Plan.  Except as

{01029801_01031987.DOC;1 }

otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Debtor, from the Properties or from property of the Estate, any claim, any obligation or debt that was held against the Debtor by any person or entity as of the Confirmation Date except pursuant to the terms of this Plan. The entry of the Confirmation Order shall permanently enjoin all Creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims.

LIMITATION OF LIABILITY

To the **maximum** extent permitted under Section 1125(e) of the Bankruptcy Code, neither the ~~Released Entities~~**Debtor** nor any of ~~their~~**its** respective officers, directors, or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan~~, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing in this Section 8.2 shall limit the liability of the Debtor's professionals pursuant to Rule 1.8 (h)(1) of the New York State Rules of Professional Conduct. Nothing in the Plan or the confirmation order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor or any of its respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Debtor or any of its respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate Debtor or any of its respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority.~~**.**

DISCHARGE.

**On the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, only to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor and the Post-Confirmation Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in §1141(d)(6)(A); or (iii) of a kind specified in §1141(d)(6)(B).**

### ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court, the alternatives may include (a) liquidation of the Debtor under chapter 7 of the Bankruptcy Code; (b) the formulation, promulgation and confirmation of an alternative plan of reorganization premised upon exit financing, or a sale of the Debtor's contract rights; or (c) dismissal of the Debtor's case.

The Plan proposes payment in full to all classes of claims and therefore the Plan provides a recovery to all Creditors equal to or greater than would be obtainable in a chapter 7 liquidation.

### CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possibly arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Debtor has not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will the Debtor, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel. Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. The Debtor offers no statements or opinions that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan. Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim.

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditor will differ and will depend on factors specific to each Creditor, including but not limited to: (i) whether the Claim (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim; (iii) the type of consideration

{01029801_01031987.DOC;1 }

received by the Creditor in exchange for the Claim; (iv) whether the Creditor is a United States person or foreign person for tax purposes; (v) whether the Creditor reports income on the accrual or cash basis method; and (vi) whether the Creditor has taken a bad debt deduction or otherwise recognized loss with respect to a Claim.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE, IT IS IMPORTANT THAT EACH CREDITOR OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR SHOULD SEEK ADVICE BASED UPON THE CREDITOR'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

### ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement, and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to (i) the Debtor's counsel, Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, 9th Fl., New York, NY 10022, Attn.: A. Mitchell Greene, Esq., (212) 603-6300 or (ii) may be retrieved from the Court's web site at https://ecf.nyeb.uscourts.gov (provided such party has PACER access).

Copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in this case are on file in the Office of the Clerk of the United States Bankruptcy Court at One Bowling Green, New York, New York 10004, and are available for public inspection Monday through Friday, between the hours of 9:00 a.m. and 4:30 p.m.

{01029801.01031987.DOC;1 }

## CONCLUSION

The Debtor believes that the Plan is in the best interests of all Creditors.

Dated:        New York, New York
              ~~October~~November 11, 2019

                                    AAGS HOLDINGS LLC
                                    BY:  GC Realty Advisors, LLC

                                    By: /s/ David Goldwasser____
                                    David Goldwasser
                                    Authorized Signatory

                                    ROBINSON BROG LEINWAND GREENE
                                    GENOVESE & GLUCK P.C.
                                    Counsel to the Debtor
                                    875 Third Avenue
                                    New York, New York 10022

                                    By: /s/ A. Mitchell Greene____
                                    A. Mitchell Greene___
                                    ~~A. Mitchell Greene~~

Document comparison by Workshare 10.0 on Monday, November 11, 2019
5:01:10 PM

| Input: | |
|---|---|
| Document 1 ID | file://\\MAIN01\docs\CLIDOCS\103572\0000\01029801.DOC |
| Description | 01029801 |
| Document 2 ID | file://\\MAIN01\docs\CLIDOCS\103572\0000\01031987.DOC |
| Description | 01031987 |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 95 |
| Deletions | 64 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 161 |