Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-13029-smb

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    AAGS HOLDINGS LLC,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                   United States Bankruptcy Court

13                   One Bowling Green

14                   New York, NY   10004

15

16                   November 14, 2019

17                   10:20 AM

18

19

20

21   B E F O R E :

22   HON STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  TL

Page 2

1    HEARING re Motion for Order Approving Disclosure Statement

2    and Confirming Debtor's Plan of Reorganization

3

4    HEARING re Case Conference

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   ROBINSON BROG LEINWAND GREEN GENOVESE & GLUCK P.C.

 4        Attorneys for the Debtor

 5        875 Third Avenue

 6        New York, NY 10022

 7

 8   BY:  FRED B. RINGEL

 9        CLEMENT YEE

10

11   RUBIN LLC

12        Attorneys for QPS 23-00010 Development LLC

13        345 Seventh Avenue, 21st Floor

14        New York, NY 10001

15

16   BY:  PAUL RUBIN

17        HANH HUYNH

18

19

20

21

22

23

24

25
```

Page 4

1                    P R O C E E D I N G S

2              THE COURT:  AAGS.

3              MR. RINGEL:  Good morning, Your Honor.

4              THE COURT:  Good morning.  Go ahead.

5              MR. RINGEL:  Your Honor, let me bring you up to

6    date from where we were when we were last here.  We filed an

7    amended plan and disclosure statement, followed by a second

8    amended, which is the document that we are going forward on,

9    which includes all the comments from our lender.  And what

10   we have is, we've developed and I can hand it up or we can

11   put it on through a witness, a sources and uses for the plan

12   and disclosure statement.  One was attached to the

13   disclosure statement as an exhibit.

14             After we filed that we received the claim that was

15   filed by QPS, which was for about $300,000 more than what we

16   had estimated in our sources and uses.  So we did a second

17   one, which Your Honor does not have yet, which reflects the

18   QPS claim at 659,774 which is what it was filed at.

19             The amount of money that has been sent to us and

20   deposited in our escrow account is actually $122,000 more

21   than the 34,537,000.

22             THE COURT:  There were two sources of the escrow,

23   as I recall, the exit financing and the principal also put

24   up?

25             MR. RINGEL:  There are -- actually are three

Page 5

1    sources.  There were wires from the existing members,

2    totaling $2,537,786.  There's another wire from Churchill,

3    who is acquiring a 50 percent membership interest,

4    subsequent to closing, for 250,000.  And then there are the

5    proceeds of the loan.  And let me just explain, Your Honor,

6    that was net funded.  So they funded 25,535,416.67, and when

7    I say net funded, they are also giving us credit for the

8    origination fee of 595,000 --

9                    THE COURT:  How much cash do you have?

10                   MR. RINGEL:  The cash that we have is 30 -- hold

11   on.

12                   THE COURT:  This is in your escrow account?

13                   MR. RINGEL:  It is in our escrow account, with one

14   exception.  One wire has been sent and I'm waiting for the

15   confirm, Your Honor.  But the monies from the equity

16   holders, the 4,537,786 is in my escrow account, the two

17   wires -- there are two wires that are coming from Churchill,

18   one has been sent and we have a fed reference number for

19   that, and that's for 3,614,938, and the other has been

20   initiated and my office, I'm waiting for the confirmation of

21   it, for 22,170,480.

22                   THE COURT:  That's the big one, that's the one you

23   need.

24                   MR. RINGEL:  Yes, but it -- I have the initiation

25   here.  It was sent --

```
 1                THE COURT:  All right.  Let me ask the question --

 2                MR. RINGEL:  -- by Citibank.  And -- yeah.

 3                THE COURT:  -- a different way.  How much money do

 4     you have in your escrow account right now?

 5                MR. RINGEL:  I have the --

 6                THE COURT:  Total.  Don't give me components.

 7     It's money, it's fungible.

 8                MR. RINGEL:  Yes, I'll give you the total right

 9     now, Your Honor.  I have, in my account, 8,152,724.  And as

10     I said before, Churchill is giving us credits for the

11     origination fee and the --

12                THE COURT:  How much is the confirmed wire

13     transfer?

14                MR. RINGEL:  That's the number I just gave you,

15     Your Honor, the 8 million -- I'm sorry.

16                THE COURT:  I'm asking you a different question.

17                MR. RINGEL:  Yes.

18                THE COURT:  What do you have in your escrow

19     account right --

20                MR. RINGEL:  That's the number I just gave you,

21     the 8 million.

22                THE COURT:  Okay.  And that includes the confirmed

23     wire transfer?

24                MR. RINGEL:  That's the confirmed wire transfers.

25                THE COURT:  And the sent, but unconfirmed wire
```

Page 7

```
 1    transfer is about 22 million?

 2              MR. RINGEL:  Twenty-two million one seventy-four

 3    eighty.  And if we can come -- if you want to do second

 4    call, Your Honor, I can probably have it confirmed by then,

 5    because it was sent --

 6              THE COURT:  You're the only case I have left.

 7              MR. RINGEL:  Okay.

 8              THE COURT:  You want me to take a recess for five,

 9    ten minutes?

10              MR. RINGEL:  What time is was it sent?

11              MAN:  Yeah, it was sent at 9:00 this morning.

12              MR. RINGEL:  It was sent at 9:00 this morning.  As

13    soon as I have the said wire number, I can confirm it

14              THE COURT:  All right.  Why don't we deal with

15    some of the other issues then, if there are any other

16    issues, other than money.

17              MR. RINGEL:  Sure, Your Honor.  The only issues --

18    well, I don't know if there are other issues, Your Honor.

19              THE COURT:  Well, why don't you -- why don't you

20    begin with an offer of proof.  Tell me who's going to

21    testify.

22              MR. RINGEL:  Yes.

23              THE COURT:  I'll ask Mr. Rubin if he accepts the

24    offer of proof or if he wants to cross examine the proffered

25    witness.
```

Page 8

1          MR. RINGEL:  Yes.  The offer of proof, Your Honor,

2     is from David Goldwasser, who is the bankruptcy consultant

3     of the Debtor.  Mr. Goldwasser developed the sources and

4     uses that are attached to the disclosure statement, that was

5     one of his responsibilities as the bankruptcy consultant to

6     the Debtor.  He's familiar with the funding, the acquisition

7     loan from Churchill.  He's familiar with the development

8     that the Debtor is going to engage in, post-confirmation,

9     and the expenses that the Debtor is going to incur

10    subsequent to confirmation

11          He compiled the list of sources which total

12    $34,415,762, which is set forth in the exhibit to the

13    disclosure statement.

14          THE COURT:  But the numbers you gave me only add

15    up to about 30 million and change.

16          MR. RINGEL:  And the differential, Your Honor, are

17    the credits that Churchill are giving us for the origination

18    fee of $595,000 --

19          THE COURT:  But --

20          MR. RINGEL:  In other words --

21          THE COURT:  -- let's stop.  You have -- you're

22    going to have $30 million in cash, you need 27.4 just for

23    the purchase price, right?

24          MR. RINGEL:  Yeah.  Right.

25          THE COURT:  Okay.  Then QPS has asserted a claim

1    for about 650 that you're going to reserve for?

2            MR. RINGEL:  Yes, Your Honor, 659,774.  Yes.

3            THE COURT:  Let's say 660.  Okay.  What other

4    expenses?  You have attorney's fees; how much are those

5    going to be?

6            MR. RINGEL:  A hundred and fifty thousand.

7            THE COURT:  What other --

8            MR. RINGEL:  We have other claims, Your Honor,

9    other unsecured claims that are getting paid.

10           THE COURT:  Right.  How much are those?

11           MR. RINGEL:  Those, with a interest component at

12   the federal judgment rate, are 595,680.

13           THE COURT:  Five ninety-five?

14           MR. RINGEL:  Um hmm.

15           THE COURT:  Okay.

16           MR. RINGEL:  We have U.S. Trustee fees, based on

17   the purchase price of -- on the disbursements, Your Honor,

18   that we're calculating at about $34 million, of 250,000, for

19   this quarter.  And we have also estimated, in terms of

20   carrying costs going forward of $275,600.  Those are for the

21   carrying costs from the effective date of the plan through

22   the maturity date of the loan, which is one year from the

23   effective date

24           THE COURT:  How did you come up with that number?

25           MR. RINGEL:  That number consists of the real

Page 10

1    property taxes on the property, which I believe were

2    $255,000 -- 255,600, and an estimate of insurance, based on

3    discussions with the broker, of $20,000.

4              THE COURT:  Okay.

5              MR. RINGEL:  There was also an estimate, Your

6    Honor, of pre-development costs for the property of

7    $500,000.

8              THE COURT:  And what is that for, zoning, if

9    necessary and architectural plans and things like that?

10             MR. RINGEL:  Yeah, it's architect, engineer, legal

11   fees, and a $50,000 contingency.

12             THE COURT:  What's the contingency?

13             MR. RINGEL:  And just --

14             THE COURT:  Oh, you -- oh, that's additional

15   money.  I understand.

16             MR. RINGEL:  In case -- for a contingency, in case

17   it's necessary in terms of the redevelopment clause.

18             THE COURT:  Anything else?

19             MR. RINGEL:  Yes.  In connection with the closing

20   of the loan, we have estimated $25,000 of legal, $10,000 for

21   the application fee, processing fee, title costs of two

22   twenty-three one twenty-five, and costs for third party

23   reports, I assume environmental, appraisals and the like of

24   $12,000.

25             THE COURT:  This is for the closing of the

Page 11

1    transaction with QPS?

2              MR. RINGEL:  With Churchill, yes, Your Honor.

3              THE COURT:  Oh, with Churchill.

4              MR. RINGEL:  Yeah, that's the closing of the

5    transaction, yes.

6              THE COURT:  So -- okay, anything else?

7              MR. RINGEL:  That's it, Your Honor.

8              THE COURT:  So what do all those numbers you just

9    gave me add up to?

10             MR. RINGEL:  All of those numbers add up to

11   $34,000,415 -- excuse me, $34,415,762.

12             THE COURT:  Okay.  So how do you make the

13   approximate 4 million, between what you just told me and the

14   30 million that you expect to have?

15             MR. RINGEL:  The $595,000 origination fee for

16   Churchill, and the interest reserve, which was $3,619,000 --

17             THE COURT:  That's not in your numbers here.

18             MR. RINGEL:  Oh, I'm sorry, Your Honor, then I

19   mistakenly skipped it.  That is part of the 34,415,762.

20             THE COURT:  Okay.  So that's it -- the interest

21   reserve is 3 million?

22             MR. RINGEL:  Three million six hundred and

23   nineteen thousand five hundred and eighty-three dollars and

24   thirty-three cents.  That's part of the $34 million figure -

25   - 34,415,782.

1           THE COURT:  And are these the costs that Churchill

2   is -- what are they doing?

3           MR. RINGEL:  The cost of the Churchill loan.

4   Remember we -- I don't know if you remember, we talked about

5   it last time, one of the questions was where is the money

6   coming for the interest reserve one year, that's the 3.6

7   million.  We also had to pay an origination fee.

8           THE COURT:  I guess what I'm not understanding is

9   now you've given me -- are you saying that these aren't

10  debts the Debtor will have to -- expenses the Debtor will

11  have to pay?

12          MR. RINGEL:  Yes.  And the sources that we have --

13          THE COURT:  Do you have the updated sources and

14  uses for everybody?

15          MR. RINGEL:  Yes.  May I, Your Honor?

16          THE COURT:  Maybe -- yeah, do you have one for

17  counsel?

18          MR. RINGEL:  Yes, I do.

19          THE COURT:  Should have done this first.

20      (Counsel confer.)

21          THE COURT:  What's this $4,400,000 equity

22  contribution?

23          MR. RINGEL:  That -- those are the first two

24  numbers I gave you, Your Honor, that I have -- that are in

25  my account.  I said they were 4 million-actually-537,786

Page 13

1  that I've received from equity.  It's a little bit more.

2  There's actually a $122,000 more than we need in my escrow

3  account.

4           THE COURT:  The loan is for how much, $29,750,000

5  but you only have a transfer coming in of 22 million from

6  Churchill.

7           MR. RINGEL:  No, 22 million was one transfer, and

8  the second transfer was 3,614,938, Your Honor.  If I can

9  hand up a copy --

10          THE COURT:  But that's less than 29 -- I'm just

11  not following these numbers

12          MR. RINGEL:  No, no, no.  Your Honor, there were

13  two transfers from Churchill.

14          THE COURT:  What's the aggregate of the Churchill

15  transfers?  Let's assume --

16          MR. RINGEL:  The aggregate -- Your Honor, the

17  aggregate of the transfers are 25,535,416.  If I can hand up

18  a calculation, Your Honor, it will make it much easier for

19  you to follow.

20          THE COURT:  Fine.  Because it's not easy now, I

21  got tell you.

22          MR. RINGEL:  Okay.  I'll give them to counsel,

23  too.

24          THE COURT:  Okay.

25       (Counsel confer.)

Page 14

1          THE COURT:  I guess what I don't understand is you

2     have, I guess as a source, the credits that Churchill is

3     giving in the approximate sum of $4.2 million.  How is that

4     a source?

5          MR. RINGEL:  Well, Your Honor, we're -- those are

6     two amounts we're not going to have to pay.

7          THE COURT:  Ever?  They should come off of the

8     uses then.

9          MR. RINGEL:  Well, Your Honor.  No, no.  If --

10    Churchill's funding the loan.  If they funded the whole

11    29,750,000, we would just give that money back to them.

12    They said, instead we'll just go into net fund the loan.  So

13    instead of giving you the 29,750,000 we will give you

14    25,535,416 and at the closing we will credit the origination

15    fee and we will credit --

16         THE COURT:  I got it.

17         MR. RINGEL:  -- the interest reserve, so you will

18    have the interest reserve.

19         THE COURT:  Okay.  I understand.

20         MR. RINGEL:  If you total the whole thing up, it

21    totals $29,750,000, Your Honor.

22         THE COURT:  Okay.  Now I understand.

23         MR. RINGEL:  Okay?

24         THE COURT:  So it's coming --

25         MR. RINGEL:  It's net funded.

Page 15

1              THE COURT:  -- it's basically it's a wash.

2              MR. RINGEL:  Yes.  Yes.

3              THE COURT:  The uses and the sources.  Okay.

4              MR. RINGEL:  And it totals the whole -- it totals

5      the 29,750,000 from Churchill and plus the 250,000.  That's

6      the entirety of the monies that are coming in from

7      Churchill.

8              And, Your Honor, if you see at the top, the member

9      equity, the 2 million, the first wire from Mr. Siegel, which

10     I have the confirms for and which are in my account, and the

11     second wire from Mr. Siegel, those total 2,535,786.  It's

12     more than what the equity contribution was required from the

13     equity security holders of four million four fifteen.  So

14     it's about 122 more than that.  It gives us a little bit of

15     room in case -- you know, I know Mr. Rubin will stand up

16     later and say, but there's still interest that's going to

17     run on my claim until it's resolved, because we are going to

18     object to it, so that gives us a little bit of room to deal

19     with things like that.

20             THE COURT:  Okay.  All right.  Let me hear from

21     Mr. Rubin.

22             MR. RUBIN:  With regard to the numbers he just

23     went through, I would ask for a clarification that there's

24     not going to be a claim against the estate from Mr.

25     Goldwasser or his entity he's serving as a consultant.

1    That's nowhere --

2            THE COURT:  Well, he's never been retained.

3            MR. RUBIN:  Never been retained?

4            MR. RINGEL:  That's right

5            MR. RUBIN:  So --

6            THE COURT:  He can make all the claims he wants,

7    Mr. Rubin.

8            MR. RUBIN:  Thank you, Your Honor.  There are --

9    there were just some logistical issues that don't go to

10   these numbers.  I don't know if you want me to address those

11   now?

12           THE COURT:  It's your turn.

13           MR. RUBIN:  Okay.  Thank you, Your Honor.  With

14   regard to the actual closing, we have asked Mr. Ringel for

15   at least 48 hours advanced notice, because we were told

16   originally in the plan, they want to closed by the 27th,

17   yesterday he told me they may want to close next week, where

18   they need to coordinate to deal with -- tell real estate

19   counsel to gear up for --

20           THE COURT:  I don't think they'll care, as long as

21   you give them enough time to close.

22           MR. RINGEL:  Forty-eight hours is fine, Your

23   Honor.

24           THE COURT:  All right.

25           MR. RUBIN:  Okay.  I would also -- I would

1   appreciate if he's going to tell us what we should expect to

2   be funded from our proof of claim at the closing so we know

3   that those funds have actually -- are being paid.  We have

4   filed a proof of claim.  I know he's got an issue with

5   regard to what the appropriate interest rate should be on

6   the damage that we have.

7           THE COURT:  Yeah, I'll tell you, I don't think

8   you're entitled to interest, though you may not be at all,

9   but that's a different issue.

10          MR. RUBIN:  But there are other items to it, Your

11  Honor, that we would want to know what actually are being

12  funded, just --

13          THE COURT:  Well, yeah.  I mean, look, you've

14  asserted a claim, whatever it is $660,000 and they're going

15  to have a reserve for that.

16          MR. RUBIN:  Okay.

17          THE COURT:  All right?

18          MR. RUBIN:  Yes, Your Honor.  I believe that there

19  are going to be some aspects of that that are not disputed,

20  that's all I'm asking, so.

21          THE COURT:  Well, sometimes the plan says that if

22  there's an objection you don't get anything until everything

23  is resolved, even if there's a one-dollar dispute.

24          MR. RUBIN:  Understood.

25          THE COURT:  You know, you can try and negotiate

1    that out and maybe reach a resolution on this dispute.

2              MR. RUBIN:  Okay.  I did want to clarify with

3    regard to -- is there going to be a briefing schedule with

4    regard to the objection or are we just going to wait for the

5    objection to be filed and we deal with that in due course?

6              MR. RINGEL:  Well, Your Honor --

7              THE COURT:  It depends what they're objecting to.

8    I mean, putting aside interest, I don't know what you're

9    objecting to.  I looked at the proof of claim, and the

10   insurance and the taxes have been prorated, I don't know if

11   there's an attorney's fees issue in this case.

12             MR. RINGEL:  Yes, there -- not with Mr. Rubin so

13   much as with prior Cashman and the --

14             THE COURT:  Well, does the purchase agreement

15   provide for attorney's fees?

16             MR. RINGEL:  Your Honor, the --

17             THE COURT:  Or are you saying it's an element of

18   damages?

19             MR. RUBIN:  Element of damages, Your Honor.

20             MR. RINGEL:  The question is the amount, Your

21   Honor.  There's an estimate in there, too, for -- they had

22   $18,000 of attorney's fees through, I guess, through the

23   date we were here last October 29th.

24             THE COURT:  You know --

25             MR. RINGEL:  And a $20,000 estimate going forward,

1   so.

2              THE COURT:  -- the big number is the interest --

3              MR. RINGEL:  Yes, Your Honor.

4              THE COURT:  -- because it's $500,000.  And I have

5   to tell you, I wasn't being glib when I said I'm not sure

6   you're entitled to any interest.  I'm certainly sure you're

7   not entitled to your lost opportunity costs of 12 percent,

8   which is what you're asserting.  I mean, if you want to

9   survey the issue, you can look at the Fifth Circuit's case

10  in Ultra Petroleum, which at the end of the decision deals

11  with the three possibilities, basically: that you're not

12  entitled to any interest, that you're entitled to interest

13  at the federal judgment rate, or that you're entitled to

14  interest at some equitable rate that the Court will fix.

15              There's case law in this district which says

16  you're not entitled to lost opportunity costs.  So -- and

17  I'm not ruling on this now, but -- I think it's Forrest

18  Hills Associates, or something like that, it was a Judge

19  Lifland decision.  What I'm saying is there's enough of a

20  cushion here.  My sense is there's enough of a cushion to

21  satisfy your claim once the issues are resolved.

22              And if you can resolve the interest rate, I think

23  the other issues will go away because they're really -- I

24  mean, it's money and it's their money and it's your money, I

25  understand that, but they're not the big issues in the case,

1    and I think you're probably entitled to the prorated portion

2    of the real estate taxes and that kind of stuff.

3                    MR. RUBIN:  Okay.

4                    THE COURT:  Okay?

5                    MR. RUBIN:  With regard to the confirmation order,

6    Mr. Ringel and I have been trying to work together to get

7    language that's mutually agreeable.  And I think there was

8    an issue that we discussed before court and I think we're

9    resolved on that issue.

10                   THE COURT:  Okay.

11                   MR. RUBIN:  So I just want to make sure that we're

12   going to work together so that we can get to -- I don't want

13   to hold anything up, we want to get our money as quickly as

14   possible.

15                   THE COURT:  No, I understand that.

16                   MR. RUBIN:  So we just want to have --

17                   THE COURT:  And, you know, the faster this case

18   gets out of this court everybody saves money --

19                   MR. RUBIN:  Right.

20                   THE COURT:  -- because it's expensive to be here

21   for everyone.

22                   MR. RUBIN:  Right.  So we just want to work

23   together on a consensual confirmation order to work out that

24   last paragraph with the language there that we discussed in

25   the hallway this morning.  And I believe that's it, Your

1    Honor.  Thank you.

2              THE COURT:  Do you have -- well, do you have any

3    other objections to confirmation?  I mean, this is a very

4    straightforward case.

5              MR. RUBIN:  I think this resolves --

6              THE COURT:  All of the elements of 1129(a) are

7    solved, the only issue I had was feasibility really.

8              MR. RUBIN:  Right.  And assuming the money

9    (indiscernible) --

10             THE COURT:  You know, either they're going to cut

11   you a check or they're not going to cut you a check by next

12   week.  So --

13             MR. RUBIN:  Right.  Money shows up or it doesn't,

14   Your Honor.

15             THE COURT:  Right.

16             MR. RUBIN:  Thank you.

17             THE COURT:  All right.  Anything else?

18             MR. RINGEL:  No, Your Honor.  You know, as long as

19   we can get to the closing, we'll give them 48 hours' notice.

20   And --

21             THE COURT:  Okay.  What are you going to pay them

22   at the closing?  This really goes to Mr. Rubin's question.

23   I mean, at a minimum you've got to pay them the purchase

24   price.

25             MR. RINGEL:  There are two issues with that

Page 22

1             THE COURT:  Don't tell me you're not going to pay

2    them anything at the closing --

3             MR. RINGEL:  We're going to pay them --

4             THE COURT:  -- because you're objecting to their

5    claim, is what I'm saying.

6             MR. RINGEL:  -- let me -- we're going to pay them.

7    We're going to pay them the purchase price of 27 --

8             THE COURT:  Four hundred thousand.

9             MR. RINGEL:  -- whatever-400,000-dollars.

10            THE COURT:  Okay.

11            MR. RINGEL:  The only reason I'm saying there are

12   two issues is I'll alert -- and I told Mr. Rubin about this

13   before, there is this settlement agreement that's out there

14   that there are other claimants that say they're entitled to

15   get $1.2 million out of the settlement proceeds.

16            THE COURT:  From the Debtor?  From the Debtor?

17            MR. RINGEL:  From the seller.  And on the original

18   settlement sheet that was submitted, Your Honor, with Ari

19   Tran's declaration, the original settlement sheet from Royal

20   Abstract had a deduction for the 1.2 million because the

21   settlement agreement between the seller and Mr. Russ, among

22   others, who's here today, we provided and went to Mr. Russ

23   in escrow, and that was something that was being deducted.

24            There was also real property transfer taxes that

25   were being deducted.  And I know Mr. Rubin takes the

Page 23

1    position that he's entitled to the exemption for the real

2    property transfer taxes

3                 THE COURT:   Under 1146?

4                 MR. RINGEL:   Under 1146.

5                 THE COURT:   Well, if you do it under a plan, then

6    what --

7                 MR. RINGEL:   Well, I know -- I mean, the only

8    concern I have is the title company, who I spoke with, and I

9    told Mr. Rubin that he should speak to them, has some

10   reservations about whether a nondebtor is going to have a

11   problem -- whether the city is going to have a problem with

12   it, because it's a nondebtor that's claiming it.   But I told

13   him he should just work to clear that up.

14                THE COURT:   Wait a minute.   I thought --

15                MR. RINGEL:   I thought, you know --

16                THE COURT:   -- you know, I see these sales under

17   plans all the time and what's the problem?

18                MR. RINGEL:   He told me that --

19                THE COURT:   He, being Mr. Rubin?

20                MR. RINGEL:   No.   He, meaning the person who is

21   the principal at the -- at Royal Abstract --

22                THE COURT:   Right.

23                MR. RINGEL:   -- told me that when they go to

24   record deeds and the real property transfer tax is not being

25   paid by the Debtor, in connection with a plan, that the city

1    has given them a problem with recording the deeds because

2    they take the position that it's not in furtherance of the

3    plan.

4              THE COURT:  But that's a bankruptcy question.

5              MR. RINGEL:  I know, and you know, I just don't

6    want there to be a problem.  I suggested he speak to them

7              THE COURT:  Well, why don't you just include in

8    the confirmation order a direction that the appropriate

9    filing entity file it without paying for the filing --

10             MR. RINGEL:  I --

11             THE COURT:  -- without paying the fee?

12             MR. RINGEL:  -- Your Honor, I originally had a

13   provision in there dealing with the transfer tax and the

14   mortgage tax, and Your Honor asked me to take it out.

15             THE COURT:  Well, the reason I do that --

16             MR. RINGEL:  Yeah.

17             THE COURT:  -- is I don't really know what the

18   stamp or similar taxes are, so I -- you know, I leave it to

19   the -- I just use the statutory language --

20             MR. RINGEL:  So as a practical issue --

21             THE COURT:  -- it's not even necessary to put in

22   there.  How much would it be?  What is it four dollars on a

23   thousand or something?

24             MR. RINGEL:  We're talking about real money here.

25   We're talking about, I guess, close to a million dollars for

1    the transfer tax and the mortgage recording tax is probably

2    close to that too.  So we're talking about $2 million

3    between the two of them.

4            THE COURT:  Are you telling me that that's the

5    type of tax that's a stamp or similar tax within 1146?

6            MR. RINGEL:  Yes.  Yes, Your Honor.  We have --

7    you know, I've been doing --

8            THE COURT:  Is there any case that's decided that?

9            MR. RINGEL:  Jacoby Bender.  I mean, remember I

10   used to work at the city, I lost this many times trying to

11   not get it exempted.

12           THE COURT:  Jacoby Bender was that --

13           MR. RINGEL:  That was for real property transfer

14   tax --

15           THE COURT:  -- well, that was that Second Circuit

16   case --

17           MR. RUBIN:  Yes.  Yes.

18           MR. RINGEL:  That is -- that was a case I was

19   involved in, Your Honor, when I was at corporation counsel

20   and then there were three or four others.

21           THE COURT:  Why don't you do this, include it in

22   the confirmation order and just provide me with a letter

23   brief citing the case, and I'll go and read the case, okay?

24           MR. RUBIN:  Thank you, Your Honor.

25           THE COURT:  Does that solve the problem?

1          MR. RUBIN:  I think it does, Your Honor.

2          MR. RINGEL:  I don't want to -- I just don't want

3   it to hold up the closing.  Yeah.

4          THE COURT:  Well, I realize the problem sounds

5   like it's Royal Abstract and not the parties.

6          MR. RINGEL:  It's --

7          MR. RUBIN:  We have no problem with Royal

8   Abstract, Your Honor.  Mr. Ringel suggested, as he said,

9   that I should call them.  And we did call them before this

10  hearing and what they told me is they have no problem at all

11  with the transfer tax.

12         MR. RINGEL:  Good.

13         MR. RUBIN:  And the Jacoby Bender case is the

14  reason why.  They may have an issue with the mortgage

15  recording tax (indiscernible), Your Honor.

16         THE COURT:  How much is that?

17         MR. RUBIN:  What is the mortgage recording tax,

18  Fred?

19         MR. RINGEL:  I think it's in the same -- it's

20  roughly in the same amount.

21         MR. RUBIN:  Like $900,000.

22         MR. RUBIN:  Yeah, it's about 900,000.

23         MR. RUBIN:  That's -- that they may have an issue

24  with.  But they don't have an issue with the transfer tax

25         THE COURT:  No, no, is there any case that's

Page 27

1    decided that?

2              MR. RINGEL:  I believe so, Your Honor.

3              MR. RUBIN:  Amsterdam Avenue Associates was one,

4    for example.

5              MR. RINGEL:  Yeah.

6              THE COURT:  All right.  Well, same point.  You

7    know, you can put it in the confirmation order, but provide

8    me with a letter brief or something that explains the issue.

9              MR. RINGEL:  Okay.

10             THE COURT:  You know, I guess the city could

11   always come back, but --

12             MR. RINGEL:  It's --

13             THE COURT:  -- just give --

14             MR. RINGEL:  -- just really -- it's just a

15   practical issue I'm trying to not have.  And putting it in

16   the order -- and I mean, I put it in dozens and dozens of

17   orders, Your Honor, to be honest.  And if it's in the order

18   it's not an issue, then they don't question it.

19             THE COURT:  Well --

20             MR. RINGEL:  Then they don't question it.

21             THE COURT:  -- then they come in and they say,

22   well, we didn't have notice and it's not -- it's

23   (indiscernible)

24             MR. RINGEL:  Well, they do have notice.  We did

25   notice the city.

 1            THE COURT:  Okay.  Fair enough.

 2            MR. RINGEL:  We did.

 3            THE COURT:  You can fight that one out down the

 4    road, I guess.

 5            MR. RINGEL:  Yeah.

 6            MR. RUBIN:  Your Honor, with regard to the only

 7    other issue that Mr. Ringel mentioned, I heard him say that

 8    they're going to be funding the full amount of the purchase

 9    price --

10            THE COURT:  Oh, that's what I --

11            MR. RUBIN:  -- (indiscernible).

12            THE COURT:  -- yeah, let's -- well, you're paying

13    them the purchase price, what else?  You're paying them 27.4

14    at the closing.  Is that all you have to pay under the

15    contract?

16            MR. RINGEL:  Yeah, that's all we have to pay under

17    the contract.  I don't know if there's some other

18    adjustments, you know, the title company will take care of

19    that.

20            THE COURT:  All right.  So they're reserving for

21    the disputed --

22            MR. RINGEL:  Whatever the customary adjustments

23    are --

24            MR. RUBIN:  So we can --

25            MR. RINGEL:  -- but I don't know of anything else.

```
 1              MR. RUBIN:  -- we're going to be able to retain

 2     the security deposit, or the 100 and receive --

 3              THE COURT:  Well, that's part of the purchase

 4     price.  It's --

 5              MR. RINGEL:  Yeah, that's -- I'm talking about

 6     paying it out of the net of the deposit.

 7              THE COURT:  In other words that's what you would

 8     have gotten at the closing.

 9              MR. RUBIN:  Right.

10              THE COURT:  I mean, in terms of this 1.2 million,

11     it sounds to me that -- like that's the seller's problem.  I

12     don't know --

13              MR. RUBIN:  Exactly, Your Honor.

14              THE COURT:  -- what it has to do with the Debtor.

15              MR. RINGEL:  No, it's not, it's --

16              MR. RUBIN:  The Debtor's not a party to that

17     seller.

18              THE COURT:  You got enough -- you had enough

19     problems in this case.

20              MR. RINGEL:  I don't want to -- yeah.  No.

21              THE COURT:  Don't create new ones.

22              MR. RINGEL:  I just didn't want it to impede our

23     ability to close, that's all.

24              THE COURT:  You know, that's a fight with -- I

25     guess that the seller has.
```

Page 30

1           Anything else?

2               MR. RINGEL:  I can't think of anything, Your Honor

3               THE COURT:  Anything else?

4               MR. RUBIN:  No.

5               THE COURT:  All right.  Based upon what are

6     essentially the undisputed facts in this case, I'm satisfied

7     that the plan, as modified -- let me start with the

8     disclosure statement.

9               I'm satisfied that the disclosure statement

10    adequately describes the plan and contains adequate

11    information that would permit a hypothetical creditor or

12    investor to make a decision to accept or reject a plan,

13    realizing that there's no voting and there is no acceptance

14    or rejection, everybody's deemed to accept.  So I'll approve

15    the disclosure statement on a final basis.

16              With respect to the plan I'm satisfied that the

17    plan meets the criteria of Section 1129(a) and importantly,

18    that the plan is feasible based upon the representations of

19    counsel.  So I will confirm the case.

20              You can submit a confirmation order.  Run it past

21    Mr. Rubin.  It should include the language we talked about,

22    and some authority for it as a stamp or similar tax, and

23    I'll read it.  Okay?

24              MR. RINGEL:  Okay.  Thank you, Your Honor.

25              MR. RUBIN:  Can I just make one suggestion?

```
 1              THE COURT:  Sure

 2              MR. RUBIN:  That the submission to the Court

 3     include a representation they have received this large chunk

 4     of money.

 5              THE COURT:  Yes.

 6              MR. RINGEL:  Oh, yeah.  Yeah, yeah.

 7              MR. RUBIN:  Thank you, Your Honor.

 8              THE COURT:  As a matter of fact, what you should

 9     do is you should include a finding in the confirmation order

10     that you have X amount of dollars, and provide a

11     declaration, along with the proposed confirmation order from

12     you, certifying that the money's in your account.  Okay?

13              MR. RINGEL:  Not a problem.

14              THE COURT:  And that should satisfy that issue.

15              MR. RINGEL:  Your Honor, the only --

16              THE COURT:  Now, with respect to the objection to

17     the -- have you filed an objection to the claim?

18              MR. RINGEL:  I have not filed an objection to the

19     claim.

20              THE COURT:  All right.  I really think you should

21     work this out.  You're going to wind up spending more money

22     litigating this issue.  As I said, I think you're entitled

23     to the pro rata share of the real estate taxes and the

24     insurance, you're not entitled to 12 percent interest,

25     that's a lost opportunity cost the way it's been presented,
```

```
 1    you're just not entitled to that under 1124. You know, the

 2    attorney fees are whatever they are, but you're probably

 3    entitled to some attorney's fees as an element of damages

 4              MR. RINGEL:  Yeah.  Your Honor, I mean, I don't

 5    want to --

 6              THE COURT:  You're going to spend a million

 7    dollars fighting over $30,000.

 8              MR. RINGEL:  No, and I know Mr. Rubin too well to

 9    play a hidden ball trick with him.  We were going to contest

10    the interest completely and --

11              THE COURT:  Well, that's --

12              MR. RINGEL:  -- we'll work out the attorney's fees

13    with him.

14              THE COURT:  -- a legal -- in large part that's

15    initially a legal issue.

16              MR. RINGEL:  Yes.  I know.

17              THE COURT:  And I probably have a lot of

18    discretion on that.  Okay?

19              MR. RUBIN:  We'll talk.  Thank you, Your Honor.

20              THE COURT:  All right.  Otherwise if it's not

21    moving fast enough, Mr. Rubin, you're not getting anywhere,

22    just make an application to compel payment, you know, to

23    enforce the plan and compel payment.

24              MR. RUBIN:  Okay.  Thank you.

25              THE COURT:  And we'll deal with it in that
```

1    context.  It's still the same issue, but this way you don't

2    lose control of the way it moves along.

3              MR. RINGEL:  Your Honor, well, the intention is to

4    spend, you know, some time in the next week or so trying to

5    work it out.  And if we can't, we'll file an objection.

6    We're not -- we don't want to wait either, because we're,

7    theoretically, losing interest on it, too, Your Honor.

8              The only thing, Your Honor, is, you know, we'll

9    submit that letter brief as soon as we can.  I assume you'll

10   do it, too.  Because we both have an interest in getting

11   this confirmation order --

12             THE COURT:  Just tell me the cases to read, I

13   don't need argument.  Just tell me the cases you want me to

14   read, and I'll read them

15             MR. RINGEL:  Okay.  Thank you, Your Honor.

16             THE COURT:  All right?

17             MR. RUBIN:  Thank you.

18             THE COURT:  Thanks.

19             MR. RINGEL:  Thanks.

20             THE COURT:  Oh, let me give you a post-

21   confirmation status conference date.  If you resolve this

22   one objection this case should be out of here pretty soon.

23   And you don't want to keep --

24             MR. RINGEL:  Yeah, I'm going to file a final fee

25   app next month and --

Page 34

1            THE COURT:  You don't want to keep paying the U.S.

2    Trustee, I'm sure.

3            MR. RINGEL:  No.  I hate that I have to pay the

4    250.  Well, not me, my client.

5            THE COURT:  Let's see.  Let's say January 14.

6    Okay?

7            MR. RINGEL:  That's -- yeah, that's fine, Your

8    Honor.  Thank you, again.

9            THE COURT:  Thank you.  Good luck.

10           (Whereupon these proceedings were concluded at

11   10:52 AM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5    Sonya Ledanski                    Digitally signed by Sonya Ledanski Hyde
                                       DN: cn=Sonya Ledanski Hyde, o, ou,
6    Hyde                              email=digital@veritext.com, c=US
                                       Date: 2020.03.04 11:22:24 -05'00'
7

8       Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  November 25, 2019

[& - attorney's]                                                                                    Page 1

**&**

**&**   3:3

**1**

**1.2**   22:15,20 29:10
**10,000**   10:20
**100**   29:2
**10001**   3:14
**10004**   1:14
**10022**   3:6
**10:20**   1:17
**10:52**   34:11
**1124**   32:1
**1129**   21:6 30:17
**1146**   23:3,4 25:5
**11501**   35:23
**12**   19:7 31:24
**12,000**   10:24
**122**   15:14
**122,000**   4:20 13:2
**14**   1:16 34:5
**18,000**   18:22
**19-13029**   1:3

**2**

**2**   15:9 25:2
**2,535,786**   15:11
**2,537,786**   5:2
**20,000**   10:3 18:25
**2019**   1:16 35:25
**21st**   3:13
**22**   7:1 13:5,7
**22,170,480**   5:21
**23-00010**   3:12
**25**   35:25
**25,000**   10:20
**25,535,416**   13:17
  14:14
**25,535,416.67**   5:6
**250**   34:4
**250,000**   5:4 9:18
  15:5
**255,000**   10:2

**255,600**   10:2
**27**   22:7
**27.4**   8:22 28:13
**275,600**   9:20
**27th**   16:16
**29**   13:10
**29,750,000**   13:4
  14:11,13,21 15:5
**29th**   18:23

**3**

**3**   11:21
**3,614,938**   5:19
  13:8
**3,619,000**   11:16
**3.6**   12:6
**30**   5:10 8:15,22
  11:14
**30,000**   32:7
**300**   35:22
**300,000**   4:15
**330**   35:21
**34**   9:18 11:24
**34,000,415**   11:11
**34,415,762**   8:12
  11:11,19
**34,415,782**   11:25
**34,537,000**   4:21
**345**   3:13

**4**

**4**   11:13 12:25
**4,400,000**   12:21
**4,537,786**   5:16
**4.2**   14:3
**400,000**   22:9
**48**   16:15 21:19

**5**

**50**   5:3
**50,000**   10:11
**500,000**   10:7 19:4
**537,786**   12:25
**595,000**   5:8 8:18
  11:15

**595,680**   9:12

**6**

**650**   9:1
**659,774**   4:18 9:2
**660**   9:3
**660,000**   17:14

**8**

**8**   6:15,21
**8,152,724**   6:9
**875**   3:5

**9**

**900,000**   26:21,22
**9:00**   7:11,12

**a**

**aags**   1:7 4:2
**ability**   29:23
**able**   29:1
**abstract**   22:20
  23:21 26:5,8
**accept**   30:12,14
**acceptance**   30:13
**accepts**   7:23
**account**   4:20 5:12
  5:13,16 6:4,9,19
  12:25 13:3 15:10
  31:12
**accurate**   35:4
**acquiring**   5:3
**acquisition**   8:6
**actual**   16:14
**add**   8:14 11:9,10
**additional**   10:14
**address**   16:10
**adequate**   30:10
**adequately**   30:10
**adjustments**
  28:18,22
**advanced**   16:15
**aggregate**   13:14
  13:16,17
**agreeable**   20:7

**agreement**   18:14
  22:13,21
**ahead**   4:4
**alert**   22:12
**amended**   4:7,8
**amount**   4:19
  18:20 26:20 28:8
  31:10
**amounts**   14:6
**amsterdam**   27:3
**app**   33:25
**application**   10:21
  32:22
**appraisals**   10:23
**appreciate**   17:1
**appropriate**   17:5
  24:8
**approve**   30:14
**approving**   2:1
**approximate**
  11:13 14:3
**architect**   10:10
**architectural**   10:9
**argument**   33:13
**ari**   22:18
**aside**   18:8
**asked**   16:14 24:14
**asking**   6:16 17:20
**aspects**   17:19
**asserted**   8:25
  17:14
**asserting**   19:8
**associates**   19:18
  27:3
**assume**   10:23
  13:15 33:9
**assuming**   21:8
**attached**   4:12 8:4
**attorney**   32:2
**attorney's**   9:4
  18:11,15,22 32:3
  32:12

**attorneys** 3:4,12
**authority** 30:22
**avenue** 3:5,13
  27:3

**b**

**b** 1:21 3:8
**back** 14:11 27:11
**ball** 32:9
**bankruptcy** 1:1
  1:12,23 8:2,5 24:4
**based** 9:16 10:2
  30:5,18
**basically** 15:1
  19:11
**basis** 30:15
**believe** 10:1 17:18
  20:25 27:2
**bender** 25:9,12
  26:13
**bernstein** 1:22
**big** 5:22 19:2,25
**bit** 13:1 15:14,18
**bowling** 1:13
**brief** 25:23 27:8
  33:9
**briefing** 18:3
**bring** 4:5
**brog** 3:3
**broker** 10:3

**c**

**c** 3:1 4:1 35:1,1
**calculating** 9:18
**calculation** 13:18
**call** 7:4 26:9,9
**care** 16:20 28:18
**carrying** 9:20,21
**case** 1:3 2:4 7:6
  10:16,16 15:15
  18:11 19:9,15,25
  20:17 21:4 25:8
  25:16,18,23,23
  26:13,25 29:19
  30:6,19 33:22

**cases** 33:12,13
**cash** 5:9,10 8:22
**cashman** 18:13
**cents** 11:24
**certainly** 19:6
**certified** 35:3
**certifying** 31:12
**change** 8:15
**check** 21:11,11
**chunk** 31:3
**churchill** 5:2,17
  6:10 8:7,17 11:2,3
  11:16 12:1,3 13:6
  13:13,14 14:2
  15:5,7
**churchill's** 14:10
**circuit** 25:15
**circuit's** 19:9
**citibank** 6:2
**citing** 23:11,25
  25:10 27:10,25
**city** 23:11,25
  25:10 27:10,25
**claim** 4:14,18 8:25
  15:17,24 17:2,4
  17:14 18:9 19:21
  22:5 31:17,19
**claimants** 22:14
**claiming** 23:12
**claims** 9:8,9 16:6
**clarification**
  15:23
**clarify** 18:2
**clause** 10:17
**clear** 23:13
**clement** 3:9
**client** 34:4
**close** 16:17,21
  24:25 25:2 29:23
**closed** 16:16
**closing** 5:4 10:19
  10:25 11:4 14:14
  16:14 17:2 21:19
  21:22 22:2 26:3

28:14 29:8
**come** 7:3 9:24
  14:7 27:11,21
**coming** 5:17 12:6
  13:5 14:24 15:6
**comments** 4:9
**company** 23:8
  28:18
**compel** 32:22,23
**compiled** 8:11
**completely** 32:10
**component** 9:11
**components** 6:6
**concern** 23:8
**concluded** 34:10
**confer** 12:20
  13:25
**conference** 2:4
  33:21
**confirm** 5:15 7:13
  30:19
**confirmation** 5:20
  8:8,10 20:5,23
  21:3 24:8 25:22
  27:7 30:20 31:9
  31:11 33:11,21
**confirmed** 6:12
  6:22,24 7:4
**confirming** 2:2
**confirms** 15:10
**connection** 10:19
  23:25
**consensual** 20:23
**consists** 9:25
**consultant** 8:2,5
  15:25
**contains** 30:10
**contest** 32:9
**context** 33:1
**contingency**
  10:11,12,16
**contract** 28:15,17

**contribution**
  12:22 15:12
**control** 33:2
**coordinate** 16:18
**copy** 13:9
**corporation** 25:19
**cost** 12:3 31:25
**costs** 9:20,21 10:6
  10:21,22 12:1
  19:7,16
**counsel** 12:17,20
  13:22,25 16:19
  25:19 30:19
**country** 35:21
**course** 18:5
**court** 1:1,12 4:2,4
  4:22 5:9,12,22 6:1
  6:3,6,12,16,18,22
  6:25 7:6,8,14,19
  7:23 8:14,19,21
  8:25 9:3,7,10,13
  9:15,24 10:4,8,12
  10:14,18,25 11:3
  11:6,8,12,17,20
  12:1,8,13,16,19
  12:21 13:4,10,14
  13:20,24 14:1,7
  14:16,19,22,24
  15:1,3,20 16:2,6
  16:12,20,24 17:7
  17:13,17,21,25
  18:7,14,17,24
  19:2,4,14 20:4,8
  20:10,15,17,18,20
  21:2,6,10,15,17
  21:21 22:1,4,8,10
  22:16 23:3,5,14
  23:16,19,22 24:4
  24:7,11,15,17,21
  25:4,8,12,15,21
  25:25 26:4,16,25
  27:6,10,13,19,21
  28:1,3,10,12,20

[court - final]                                                                                     Page 3

29:3,7,10,14,18
29:21,24 30:3,5
31:1,2,5,8,14,16
31:20 32:6,11,14
32:17,20,25 33:12
33:16,18,20 34:1
34:5,9
**create**  29:21
**credit**  5:7 14:14
14:15
**creditor**  30:11
**credits**  6:10 8:17
14:2
**criteria**  30:17
**cross**  7:24
**cushion**  19:20,20
**customary**  28:22
**cut**  21:10,11

**d**

**d**  4:1
**damage**  17:6
**damages**  18:18,19
32:3
**date**  4:6 9:21,22
9:23 18:23 33:21
35:25
**david**  8:2
**deal**  7:14 15:18
16:18 18:5 32:25
**dealing**  24:13
**deals**  19:10
**debtor**  1:9 3:4 8:3
8:6,8,9 12:10,10
22:16,16 23:25
29:14
**debtor's**  2:2 29:16
**debts**  12:10
**decided**  25:8 27:1
**decision**  19:10,19
30:12
**declaration**  22:19
31:11

**deducted**  22:23
22:25
**deduction**  22:20
**deeds**  23:24 24:1
**deemed**  30:14
**depends**  18:7
**deposit**  29:2,6
**deposited**  4:20
**describes**  30:10
**developed**  4:10
8:3
**development**  3:12
8:7 10:6
**different**  6:3,16
17:9
**differential**  8:16
**direction**  24:8
**disbursements**
9:17
**disclosure**  2:1 4:7
4:12,13 8:4,13
30:8,9,15
**discretion**  32:18
**discussed**  20:8,24
**discussions**  10:3
**dispute**  17:23
18:1
**disputed**  17:19
28:21
**district**  1:2 19:15
**document**  4:8
**doing**  12:2 25:7
**dollar**  17:23
**dollars**  11:23 22:9
24:22,25 31:10
32:7
**dozens**  27:16,16
**due**  18:5

**e**

**e**  1:21,21 3:1,1 4:1
4:1 35:1
**easier**  13:18

**easy**  13:20
**ecro**  1:25
**effective**  9:21,23
**eight**  16:22
**eighty**  7:3 11:23
**either**  21:10 33:6
**element**  18:17,19
32:3
**elements**  21:6
**enforce**  32:23
**engage**  8:8
**engineer**  10:10
**entirety**  15:6
**entitled**  17:8 19:6
19:7,12,12,13,16
20:1 22:14 23:1
31:22,24 32:1,3
**entity**  15:25 24:9
**environmental**
10:23
**equitable**  19:14
**equity**  5:15 12:21
13:1 15:9,12,13
**escrow**  4:20,22
5:12,13,16 6:4,18
13:2 22:23
**essentially**  30:6
**estate**  15:24 16:18
20:2 31:23
**estimate**  10:2,5
18:21,25
**estimated**  4:16
9:19 10:20
**everybody**  12:14
20:18
**everybody's**
30:14
**exactly**  29:13
**examine**  7:24
**example**  27:4
**exception**  5:14
**excuse**  11:11

**exempted**  25:11
**exemption**  23:1
**exhibit**  4:13 8:12
**existing**  5:1
**exit**  4:23
**expect**  11:14 17:1
**expenses**  8:9 9:4
12:10
**expensive**  20:20
**explain**  5:5
**explains**  27:8

**f**

**f**  1:21 35:1
**fact**  31:8
**facts**  30:6
**fair**  28:1
**familiar**  8:6,7
**fast**  32:21
**faster**  20:17
**feasibility**  21:7
**feasible**  30:18
**fed**  5:18
**federal**  9:12 19:13
**fee**  5:8 6:11 8:18
10:21,21 11:15
12:7 14:15 24:11
33:24
**fees**  9:4,16 10:11
18:11,15,22 32:2
32:3,12
**fifteen**  15:13
**fifth**  19:9
**fifty**  9:6
**fight**  28:3 29:24
**fighting**  32:7
**figure**  11:24
**file**  24:9 33:5,24
**filed**  4:6,14,15,18
17:4 18:5 31:17
31:18
**filing**  24:9,9
**final**  30:15 33:24

**financing** 4:23
**finding** 31:9
**fine** 13:20 16:22
  34:7
**first** 12:19,23 15:9
**five** 7:8 9:13,13
  10:22 11:23
**fix** 19:14
**floor** 3:13
**follow** 13:19
**followed** 4:7
**following** 13:11
**foregoing** 35:3
**forrest** 19:17
**forth** 8:12
**forty** 16:22
**forward** 4:8 9:20
  18:25
**four** 7:2 15:13,13
  22:8 24:22 25:20
**fred** 3:8 26:18
**full** 28:8
**fund** 14:12
**funded** 5:6,6,7
  14:10,25 17:2,12
**funding** 8:6 14:10
  28:8
**funds** 17:3
**fungible** 6:7
**furtherance** 24:2

**g**

**g** 4:1
**gear** 16:19
**genovese** 3:3
**getting** 9:9 32:21
  33:10
**give** 6:6,8 13:22
  14:11,13 16:21
  21:19 27:13 33:20
**given** 12:9 24:1
**gives** 15:14,18
**giving** 5:7 6:10
  8:17 14:3,13

**glib** 19:5
**gluck** 3:3
**go** 4:4 14:12 16:9
  19:23 23:23 25:23
**goes** 21:22
**going** 4:8 7:20 8:8
  8:9,22 9:1,5,20
  14:6 15:16,17,24
  17:1,14,19 18:3,4
  18:25 20:12 21:10
  21:11,21 22:1,3,6
  22:7 23:10,11
  28:8 29:1 31:21
  32:6,9 33:24
**goldwasser** 8:2,3
  15:25
**good** 4:3,4 26:12
  34:9
**gotten** 29:8
**green** 1:13 3:3
**guess** 12:8 14:1,2
  18:22 24:25 27:10
  28:4 29:25

**h**

**hallway** 20:25
**hand** 4:10 13:9,17
**hanh** 3:17
**hate** 34:3
**hear** 15:20
**heard** 28:7
**hearing** 2:1,4
  26:10
**hidden** 32:9
**hills** 19:18
**hmm** 9:14
**hold** 5:10 20:13
  26:3
**holders** 5:16
  15:13
**holdings** 1:7
**hon** 1:22
**honest** 27:17

**honor** 4:3,5,17 5:5
  5:15 6:9,15 7:4,17
  7:18 8:1,16 9:2,8
  9:17 10:6 11:2,7
  11:18 12:15,24
  13:8,12,16,18
  14:5,9,21 15:8
  16:8,13,23 17:11
  17:18 18:6,16,19
  18:21 19:3 21:1
  21:14,18 22:18
  24:12,14 25:6,19
  25:24 26:1,8,15
  27:2,17 28:6
  29:13 30:2,24
  31:7,15 32:4,19
  33:3,7,8,15 34:8
**hours** 16:15,22
  21:19
**hundred** 9:6
  11:22,23 22:8
**huynh** 3:17
**hyde** 2:25 35:3,8
**hypothetical**
  30:11

**i**

**impede** 29:22
**importantly**
  30:17
**include** 24:7
  25:21 30:21 31:3
  31:9
**includes** 4:9 6:22
**incur** 8:9
**indiscernible** 21:9
  26:15 27:23 28:11
**information** 30:11
**initially** 32:15
**initiated** 5:20
**initiation** 5:24
**insurance** 10:2
  18:10 31:24

**intention** 33:3
**interest** 5:3 9:11
  11:16,20 12:6
  14:17,18 15:16
  17:5,8 18:8 19:2,6
  19:12,12,14,22
  31:24 32:10 33:7
  33:10
**investor** 30:12
**involved** 25:19
**issue** 17:4,9 18:11
  19:9 20:8,9 21:7
  24:20 26:14,23,24
  27:8,15,18 28:7
  31:14,22 32:15
  33:1
**issues** 7:15,16,17
  7:18 16:9 19:21
  19:23,25 21:25
  22:12
**items** 17:10

**j**

**jacoby** 25:9,12
  26:13
**january** 34:5
**judge** 1:23 19:18
**judgment** 9:12
  19:13

**k**

**keep** 33:23 34:1
**kind** 20:2
**know** 7:18 12:4
  15:15,15 16:10
  17:2,4,11,25 18:8
  18:10,24 20:17
  21:10,18 22:25
  23:7,15,16 24:5,5
  24:17,18 25:7
  27:7,10 28:17,18
  28:25 29:12,24
  32:1,8,16,22 33:4
  33:8

**l**

language   20:7,24
   24:19 30:21
large   31:3 32:14
law   19:15
leave   24:18
ledanski   2:25 35:3
   35:8
left   7:6
legal   10:10,20
   32:14,15 35:20
leinwand   3:3
lender   4:9
letter   25:22 27:8
   33:9
lifland   19:19
list   8:11
litigating   31:22
little   13:1 15:14
   15:18
llc   1:7 3:11,12
loan   5:5 8:7 9:22
   10:20 12:3 13:4
   14:10,12
logistical   16:9
long   16:20 21:18
look   17:13 19:9
looked   18:9
lose   33:2
losing   33:7
lost   19:7,16 25:10
   31:25
lot   32:17
luck   34:9

**m**

m   1:22
man   7:11
matter   1:5 31:8
maturity   9:22
mean   17:13 18:8
   19:8,24 21:3,23
   23:7 25:9 27:16
   29:10 32:4

meaning   23:20
meets   30:17
member   15:8
members   5:1
membership   5:3
mentioned   28:7
million   6:15,21
   7:1,2 8:15,22 9:18
   11:13,14,21,22,24
   12:7,25 13:5,7
   14:3 15:9,13
   22:15,20 24:25
   25:2 29:10 32:6
mineola   35:23
minimum   21:23
minute   23:14
minutes   7:9
mistakenly   11:19
modified   30:7
money   4:19 6:3,7
   7:16 10:15 12:5
   14:11 19:24,24,24
   20:13,18 21:8,13
   24:24 31:4,21
money's   31:12
monies   5:15 15:6
month   33:25
morning   4:3,4
   7:11,12 20:25
mortgage   24:14
   25:1 26:14,17
motion   2:1
moves   33:2
moving   32:21
mutually   20:7

**n**

n   3:1 4:1 35:1
necessary   10:9,17
   24:21
need   5:23 8:22
   13:2 16:18 33:13
negotiate   17:25

net   5:6,7 14:12,25
   29:6
never   16:2,3
new   1:2,14 3:6,14
   29:21
nineteen   11:23
ninety   9:13
nondebtor   23:10
   23:12
notice   16:15 21:19
   27:22,24,25
november   1:16
   35:25
number   5:18 6:14
   6:20 7:13 9:24,25
   19:2
numbers   8:14
   11:8,10,17 12:24
   13:11 15:22 16:10
ny   1:14 3:6,14
   35:23

**o**

o   1:21 4:1 35:1
object   15:18
objecting   18:7,9
   22:4
objection   17:22
   18:4,5 31:16,17
   31:18 33:5,22
objections   21:3
october   18:23
offer   7:20,24 8:1
office   5:20
oh   10:14,14 11:3
   11:18 28:10 31:6
   33:20
okay   6:22 7:7
   8:25 9:3,15 10:4
   11:6,12,20 13:22
   13:24 14:19,22,23
   15:3,20 16:13,25
   17:16 18:2 20:3,4
   20:10 21:21 22:10

25:23 27:9 28:1
   30:23,24 31:12
   32:18,24 33:15
   34:6
old   35:21
once   19:21
ones   29:21
opportunity   19:7
   19:16 31:25
order   2:1 20:5,23
   24:8 25:22 27:7
   27:16,17 30:20
   31:9,11 33:11
orders   27:17
original   22:17,19
originally   16:16
   24:12
origination   5:8
   6:11 8:17 11:15
   12:7 14:14

**p**

p   3:1,1 4:1
p.c.   3:3
paid   9:9 17:3
   23:25
paragraph   20:24
part   11:19,24
   29:3 32:14
parties   26:5
party   10:22 29:16
paul   3:16
pay   12:7,11 14:6
   21:21,23 22:1,3,6
   22:7 28:14,16
   34:3
paying   24:9,11
   28:12,13 29:6
   34:1
payment   32:22,23
percent   5:3 19:7
   31:24
permit   30:11

person  23:20
petroleum  19:10
plan  2:2 4:7,11
   9:21 16:16 17:21
   23:5,25 24:3 30:7
   30:10,12,16,17,18
   32:23
plans  10:9 23:17
play  32:9
plus  15:5
point  27:6
portion  20:1
position  23:1 24:2
possibilities  19:11
possible  20:14
post  8:8 33:20
practical  24:20
   27:15
pre  10:6
presented  31:25
pretty  33:22
price  8:23 9:17
   21:24 22:7 28:9
   28:13 29:4
principal  4:23
   23:21
prior  18:13
pro  31:23
probably  7:4 20:1
   25:1 32:2,17
problem  23:11,11
   23:17 24:1,6
   25:25 26:4,7,10
   29:11 31:13
problems  29:19
proceedings
   34:10 35:4
proceeds  5:5
   22:15
processing  10:21
proffered  7:24
proof  7:20,24 8:1
   17:2,4 18:9

property  10:1,1,6
   22:24 23:2,24
   25:13
proposed  31:11
prorated  18:10
   20:1
provide  18:15
   25:22 27:7 31:10
provided  22:22
provision  24:13
purchase  8:23
   9:17 18:14 21:23
   22:7 28:8,13 29:3
put  4:11,23 24:21
   27:7,16
putting  18:8
   27:15

                q

qps  3:12 4:15,18
   8:25 11:1
quarter  9:19
question  6:1,16
   18:20 21:22 24:4
   27:18,20
questions  12:5
quickly  20:13

                r

r  1:21 3:1 4:1 35:1
rata  31:23
rate  9:12 17:5
   19:13,14,22
reach  18:1
read  25:23 30:23
   33:12,14,14
real  9:25 16:18
   20:2 22:24 23:1
   23:24 24:24 25:13
   31:23
realize  26:4
realizing  30:13
really  19:23 21:7
   21:22 24:17 27:14
   31:20

reason  22:11
   24:15 26:14
recall  4:23
receive  29:2
received  4:14 13:1
   31:3
recess  7:8
record  23:24 35:4
recording  24:1
   25:1 26:15,17
redevelopment
   10:17
reference  5:18
reflects  4:17
regard  15:22
   16:14 17:5 18:3,4
   20:5 28:6
reject  30:12
rejection  30:14
remember  12:4,4
   25:9
reorganization
   2:2
reports  10:23
representation
   31:3
representations
   30:18
required  15:12
reservations
   23:10
reserve  9:1 11:16
   11:21 12:6 14:17
   14:18 17:15
reserving  28:20
resolution  18:1
resolve  19:22
   33:21
resolved  15:17
   17:23 19:21 20:9
resolves  21:5
respect  30:16
   31:16

responsibilities
   8:5
retain  29:1
retained  16:2,3
right  6:1,4,8,19
   7:14 8:23,24 9:10
   15:20 16:4,24
   17:17 20:19,22
   21:8,13,15,17
   23:22 27:6 28:20
   29:9 30:5 31:20
   32:20 33:16
ringel  3:8 4:3,5,25
   5:10,13,24 6:2,5,8
   6:14,17,20,24 7:2
   7:7,10,12,17,22
   8:1,16,20,24 9:2,6
   9:8,11,14,16,25
   10:5,10,13,16,19
   11:2,4,7,10,15,18
   11:22 12:3,12,15
   12:18,23 13:7,12
   13:16,22 14:5,9
   14:17,20,23,25
   15:2,4 16:4,14,22
   18:6,12,16,20,25
   19:3 20:6 21:18
   21:25 22:3,6,9,11
   22:17 23:4,7,15
   23:18,20,23 24:5
   24:10,12,16,20,24
   25:6,9,13,18 26:2
   26:6,8,12,19 27:2
   27:5,9,12,14,20
   27:24 28:2,5,7,16
   28:22,25 29:5,15
   29:20,22 30:2,24
   31:6,13,15,18
   32:4,8,12,16 33:3
   33:15,19,24 34:3
   34:7
road  28:4 35:21

**robinson** 3:3
**room** 15:15,18
**roughly** 26:20
**royal** 22:19 23:21
 26:5,7
**rubin** 3:11,16
 7:23 15:15,21,22
 16:3,5,7,8,13,25
 17:10,16,18,24
 18:2,12,19 20:3,5
 20:11,16,19,22
 21:5,8,13,16
 22:12,25 23:9,19
 25:17,24 26:1,7
 26:13,17,21,22,23
 27:3 28:6,11,24
 29:1,9,13,16 30:4
 30:21,25 31:2,7
 32:8,19,21,24
 33:17
**rubin's** 21:22
**ruling** 19:17
**run** 15:17 30:20
**russ** 22:21,22

                s

**s** 3:1 4:1
**sales** 23:16
**satisfied** 30:6,9,16
**satisfy** 19:21
 31:14
**saves** 20:18
**saying** 12:9 18:17
 19:19 22:5,11
**says** 17:21 19:15
**schedule** 18:3
**second** 4:7,16 7:3
 13:8 15:11 25:15
**section** 30:17
**security** 15:13
 29:2
**see** 15:8 23:16
 34:5

**seller** 22:17,21
 29:17,25
**seller's** 29:11
**sense** 19:20
**sent** 4:19 5:14,18
 5:25 6:25 7:5,10
 7:11,12
**serving** 15:25
**set** 8:12
**settlement** 22:13
 22:15,18,19,21
**seventh** 3:13
**seventy** 7:2
**share** 31:23
**sheet** 22:18,19
**shows** 21:13
**siegel** 15:9,11
**similar** 24:18 25:5
 30:22
**six** 11:22
**skipped** 11:19
**smb** 1:3
**solutions** 35:20
**solve** 25:25
**solved** 21:7
**sonya** 2:25 35:3,8
**soon** 7:13 33:9,22
**sorry** 6:15 11:18
**sounds** 26:4 29:11
**source** 14:2,4
**sources** 4:11,16
 4:22 5:1 8:3,11
 12:12,13 15:3
**southern** 1:2
**speak** 23:9 24:6
**spend** 32:6 33:4
**spending** 31:21
**spoke** 23:8
**stamp** 24:18 25:5
 30:22
**stand** 15:15
**start** 30:7

**statement** 2:1 4:7
 4:12,13 8:4,13
 30:8,9,15
**states** 1:1,12
**status** 33:21
**statutory** 24:19
**stop** 8:21
**straightforward**
 21:4
**stuart** 1:22
**stuff** 20:2
**submission** 31:2
**submit** 30:20 33:9
**submitted** 22:18
**subsequent** 5:4
 8:10
**suggested** 24:6
 26:8
**suggestion** 30:25
**suite** 35:22
**sum** 14:3
**sure** 7:17 19:5,6
 20:11 31:1 34:2
**survey** 19:9

                t

**t** 35:1,1
**take** 7:8 24:2,14
 28:18
**takes** 22:25
**talk** 32:19
**talked** 12:4 30:21
**talking** 24:24,25
 25:2 29:5
**tax** 23:24 24:13
 24:14 25:1,1,5,5
 25:14 26:11,15,17
 26:24 30:22
**taxes** 10:1 18:10
 20:2 22:24 23:2
 24:18 31:23
**tell** 7:20 13:21
 16:18 17:1,7 19:5
 22:1 33:12,13

**telling** 25:4
**ten** 7:9
**terms** 9:19 10:17
 29:10
**testify** 7:21
**thank** 16:8,13
 21:1,16 25:24
 30:24 31:7 32:19
 32:24 33:15,17
 34:8,9
**thanks** 33:18,19
**theoretically** 33:7
**thing** 14:20 33:8
**things** 10:9 15:19
**think** 16:20 17:7
 19:17,22 20:1,7,8
 21:5 26:1,19 30:2
 31:20,22
**third** 3:5 10:22
**thirty** 11:24
**thought** 23:14,15
**thousand** 9:6
 11:23 22:8 24:23
**three** 4:25 10:22
 11:22,23,24 19:11
 25:20
**time** 7:10 12:5
 16:21 23:17 33:4
**times** 25:10
**title** 10:21 23:8
 28:18
**tl** 1:25
**today** 22:22
**told** 11:13 16:15
 16:17 22:12 23:9
 23:12,18,23 26:10
**top** 15:8
**total** 6:6,8 8:11
 14:20 15:11
**totaling** 5:2
**totals** 14:21 15:4
 15:4

**tran's**  22:19
**transaction**  11:1,5
**transcribed**  2:25
**transcript**  35:4
**transfer**  6:13,23
  7:1 13:5,7,8 22:24
  23:2,24 24:13
  25:1,13 26:11,24
**transfers**  6:24
  13:13,15,17
**trick**  32:9
**true**  35:4
**trustee**  9:16 34:2
**try**  17:25
**trying**  20:6 25:10
  27:15 33:4
**turn**  16:12
**twenty**  7:2 10:22
  10:22
**two**  4:22 5:16,17
  7:2 10:21 12:23
  13:13 14:6 21:25
  22:12 25:3
**type**  25:5

**u**

**u.s.**  1:23 9:16 34:1
**ultra**  19:10
**um**  9:14
**unconfirmed**  6:25
**understand**  10:15
  14:1,19,22 19:25
  20:15
**understanding**
  12:8
**understood**  17:24
**undisputed**  30:6
**united**  1:1,12
**unsecured**  9:9
**updated**  12:13
**use**  24:19
**uses**  4:11,16 8:4
  12:14 14:8 15:3

**v**

**veritext**  35:20
**voting**  30:13

**w**

**wait**  18:4 23:14
  33:6
**waiting**  5:14,20
**want**  7:3,8 16:10
  16:16,17 17:11
  18:2 19:8 20:11
  20:12,13,16,22
  24:6 26:2,2 29:20
  29:22 32:5 33:6
  33:13,23 34:1
**wants**  7:24 16:6
**wash**  15:1
**way**  6:3 31:25
  33:1,2
**we've**  4:10
**week**  16:17 21:12
  33:4
**went**  15:23 22:22
**wind**  31:21
**wire**  5:2,14 6:12
  6:23,24,25 7:13
  15:9,11
**wires**  5:1,17,17
**witness**  4:11 7:25
**words**  8:20 29:7
**work**  20:6,12,22
  20:23 23:13 25:10
  31:21 32:12 33:5

**x**

**x**  1:4,10 31:10

**y**

**yeah**  6:2 7:11 8:24
  10:10 11:4 12:16
  17:7,13 24:16
  26:3,22 27:5 28:5
  28:12,16 29:5,20
  31:6,6,6 32:4
  33:24 34:7

**year**  9:22 12:6
**yee**  3:9
**yesterday**  16:17
**york**  1:2,14 3:6,14

**z**

**zoning**  10:8