**ROBERT K. DAKIS, ESQ**
7 Mercer Street, 2nd Floor
New York, New York 10013
*Attorney for Churchill QPS Lender LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| **AAGS HOLDINGS LLC,** | Case No: 19-13029-smb |
| Debtor. | |

----------------------------------------------------------X

### DECLARATION OF SORABH MAHESHWARI IN SUPPORT OF MOTION OF CHURCHILL QPS LENDER LLC TO REOPEN THIS CHAPTER 11 CASE, REQUIRE COMPLIANCE WITH THE CHAPTER 11 PLAN AND CONFIRMATION ORDER, AND DIRECT DEBTOR TO SURRENDER PROPERTY TO EXIT LENDER

I, Sorabh Maheshwari, declare under penalty of perjury as follows:

1. I am a resident of the state of New York

2. I am a Founding Partner of Churchill Real Estate Holdings LLC and am an authorized signatory for Churchill QPS Lender LLC ("Churchill"). I have served in these capacities at all times relevant to the above-captioned matter. I am submitting this declaration in support of Churchill's Motion to Reopen this Chapter 11 Case, Require Compliance With The Chapter 11 Plan and Confirmation Order, and Direct Debtor to Surrender Property To Exit Lender (the "Motion"). I have personal knowledge of the facts in this matter and if called upon to testify, could and would do so as follows.

3. On or around September 20, 2019 (the "Petition Date"), AAGS Holdings LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The

purpose of the chapter 11 filing was to permit the Debtor to close on its contract to purchase the real property located at 23-10 Queens Plaza South, Queens, New York (the "Property").

4. In order to fund the Debtor's purchase of the Property, and to fund a portion of the Debtor's working capital needs for the twelve months after confirmation of the Plan, the Debtor and Churchill entered into that certain Exit Financing Loan Agreement, dated as of November 20, 2019 (the "Exit Loan Agreement"). A true and correct copy of the Exit Loan Agreement is attached hereto as Exhibit A.

5. Pursuant to the Exit Loan Agreement, Churchill lent the Debtor $29,750,000 (the "Exit Loan"). The Exit Loan was sufficiently sized to (i) fund the purchase of the Property, (ii) fund a reserve for interest, taxes and insurance for up to one year, and (iii) provide a source of working .

6. On or around November 8, 2019, the Debtor filed that certain Second Amended Plan of Reorganization dated November 8, 2019, as amended [Dkt. No. 41] (the "Plan"). A true and correct copy of the Plan is annexed hereto as Exhibit B.

7. On November 15, 2019, the Court entered that certain Order Granting Final Approval of Disclosure Statement and Confirming Plan of Reorganization, entered on November 15, 2019 [Dkt. No. 46] (the "Confirmation Order"). A true and correct copy of the Confirmation Order is annexed hereto as Exhibit C.

8. Prior to the Initial Maturity Date, as defined in the Exit Loan Agreement, the Debtor sent notice of its intent to exercise its right to extend the Initial Term. I subsequently informed the Debtor's principal Gary Segal that, pursuant to section 7.7.1 of the Exit Loan Agreement, Churchill would require Borrower to deposit $3,619,583.33 (the "Extension Reserve Amount") in interest reserve credits in connection with Lender's

approval of the extension request. The Extension reserve amount was not calculated in a vacuum. First, the Extension Reserve Amount is equal to one year of interest under the Exit Loan Agreement. Second, the Extension Reserve Amount is precisely the same as the amount funded by the Debtor into the interest reserve for interest during the Initial Term.

9. Notwithstanding Churchill's determination that it needed the exact same interest reserve during the Extension Term that it required during the Initial Term, the Debtor failed to fund in Extension Reserve Amount. Churchill permitted the Debtor to fund two months of interest while it attempted to work out additional security in lieu of the Debtor's posting the full Extension Reserve Amount, but the parties never had a full meeting of the minds regarding these proposals.

10. Debtor has also not been fully and faithfully paying interest current through this period. One month's interest at the non-default rate on the Exit Loan is approximately $301,632. On November 19, 2020, the Debtor paid $300,000 for interest from the period from November 19, 2020 through December 20, 2020. Subsequently, the Debtor has only paid $125,000 toward interest accruing from December 20, 2020 through today. The Debtor currently owes $308,833 on account of interest, not including any default interest which is currently accruing.

11. Given that the Debtor failed to fund the Extension Reserve Amount, has failed to even attempt to pay interest current, and the parties were unable to reach agreement on any other accommodation, the Debtor failed to satisfy the conditions for an extension of the Maturity Date, and Exit Loan matured on the Initial Maturity Date.

12. The Debtor failed to repay the Exit Loan on the Maturity Date, as required by the Exit Loan Agreement, and that failure is continuing.

13. On January 26, 2021, Churchill sent a Notice of Default. A true and correct copy of the notice of default is attached hereto as Exhibit D.

14. On January 27, 2021, Churchill sent a Notice of Acceleration and Demand for Payment. A true and correct copy of the Notice of Acceleration and Demand is attached hereto as Exhibit E.

15. The Debtor has neither repaid the Exit Loan nor surrendered the Property. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

February 1, 2021
New York, New York

_____
Sorabh Maheshwari